LUZ HENRY v. COMMISSIONER OF CORRECTION
(AC 18095)

Landau, Spear and Dupont, Js.

Argued December 9, 1999—officially released October 10, 2000

*Eugene J. Riccio*, with whom, on the brief, was *Lori A. McCarthy*, for the appellant (petitioner).

*Leon F. Dalbec*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Maureen M. Keegan*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

SPEAR, J. The petitioner, Luz Henry, appeals from the judgment of the habeas court dismissing her petition for a writ of habeas corpus in which she alleged ineffective assistance of counsel. She claims that the dismissal was improper because trial counsel failed (1) to investigate the petitioner's mental history, (2) to obtain an expert to review the petitioner's mental health records and (3) to interview codefendants who would have provided exculpatory statements. We affirm the judgment of the habeas court.

The following facts were found by the habeas court and are relevant to this appeal. The petitioner and four codefendants went to the apartment of the victim, Lori Englehardt, to confront her because she had earlier called the petitioner a "slut." The four codefendants pushed their way into the victim's apartment and one or more stabbed the victim eight times, resulting in her death. After the killing, the codefendants drove the petitioner to St. Mary's Hospital to establish an alibi that she was at the hospital and in labor while the crime was being committed. The petitioner did in fact deliver a child the next day.

The petitioner was subsequently arrested and charged with conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a) and aiding and abetting the crime of murder in violation of General Statutes §§ 53a-8 (a) and 53a-54a (a). She faced a maximum sentence of eighty years imprisonment. The petitioner pleaded guilty under the *Alford* doctrine[1] to a reduced charge of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-59 (a) (1), and the court imposed the maximum sentence of twenty years imprisonment. After dismissing the petitioner's habeas corpus petition, the court granted the petitioner's application for certification to appeal, and this appeal followed.

The petitioner makes three claims of ineffective assistance of trial counsel. She first claims that trial counsel failed to investigate adequately the petitioner's mental history in light of (1) the psychiatric treatment that the petitioner received after the birth of her child, (2) the

---

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). A defendant who pleads guilty under the *Alford* doctrine does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea. *State* v. *James*, 197 Conn. 358, 359 n.1, 497 A.2d 402 (1985); *State* v. *Palmer*, 196 Conn. 157, 169 n.3, 491 A.2d 1075 (1985).

fact that she was a victim of physical and emotional abuse by her husband, (3) her numerous suicide attempts and the numerous suicide attempts by members of her family and (4) her father's history of drug and substance abuse. The petitioner claims that if her mental history had been properly investigated, there might have been a basis for a mental disease or defect defense at trial. Second, the petitioner claims that the failure of trial counsel to investigate her mental history prior to trial was exacerbated by his failure to obtain an expert to evaluate her mental history for purposes of the sentencing hearing. She maintains that if trial counsel had obtained such an expert, that expert's opinion would have been persuasive in ameliorating the sentence and that she likely would have received a sentence of less than the maximum. Her last claim is that trial counsel failed to interview her codefendants in the criminal case after they indicated that they would exculpate the petitioner. Elizabeth Ruiz, one of the codefendants who pleaded guilty prior to the commencement of the petitioner's trial, had indicated that she would testify favorably for the petitioner. Despite this information, trial counsel did not interview Ruiz or any other codefendant. We agree with the habeas court's rejection of each of these claims.

We first note our standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Fuller* v. *Commissioner of Correction*, 59 Conn. App. 302, 303, 755 A.2d 380, cert. denied, 254 Conn. 943, 761 A.2d 760 (2000). "A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of the conviction . . . has two components.

First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Aillon* v. *Meachum*, 211 Conn. 352, 357, 559 A.2d 206 (1989)." (Internal quotation marks omitted.) *Fair* v. *Warden*, 211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989).

The first component, generally referred to as the performance prong, requires that the petitioner "show that counsel's representation fell below an objective standard of reasonableness." (Internal quotation marks omitted.) *Aillon* v. *Meachum*, supra, 211 Conn. 357. In *Strickland*, the United States Supreme Court held that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a [petitioner] to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged 'action might be considered sound trial strategy.' . . . [C]oun-

sel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Citations omitted.) *Strickland* v. *Washington*, supra, 466 U.S. 689–90.

Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. In the context of a guilty plea, our Supreme Court has stated: "[T]he petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial. . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a *failure to investigate* . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Citation omitted; emphasis added; internal quotation marks omitted.) *Copas* v. *Commissioner of Cor-*

*rection,* 234 Conn. 139, 156–57, 662 A.2d 718 (1995), quoting *Hill* v. *Lockhart,* 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

With this standard of review in mind, we examine each of the petitioner's claims. Additional facts will be discussed where necessary for the resolution of the claim.

## I

The petitioner first claims that trial counsel was ineffective in failing to investigate adequately the petitioner's mental history for purposes of establishing an affirmative defense and for use in mitigating her sentence. Because these issues are closely related, we will discuss them together.

The habeas court did find that trial counsel made no "concerted effort to obtain petitioner's medical records. He was aware that the petitioner had some psychiatric history and that she had been the victim of spousal abuse." The court further found that the petitioner "was reluctant to discuss or inform the attorney in any detail of these problems." The habeas court noted the petitioner's claim that information about her mental health could have been presented to a "defense-oriented forensic psychiatrist" and that a defense might have been available. The court, however, found this to be pure speculation and concluded that trial counsel focused on contesting the issues at trial because the petitioner claimed that she was not guilty and did not commit the crime. We also note that the petitioner presented no psychiatric evidence at the habeas trial in support of these claims. The habeas court properly rejected this claim.

## II

The petitioner next claims that trial counsel was ineffective at sentencing because he did not hire a qualified expert witness to review her medical records, which

would have helped in mitigating her sentence. This claim was not alleged in the petition for a writ of habeas corpus and the habeas court made no mention of such a claim, presumably because it was never presented to the court. We are not required to review claims that were not distinctly raised at trial and decline to do so here. *State* v. *Rogers*, 38 Conn. App. 777, 787, 664 A.2d 291, cert. denied, 235 Conn. 918, 665 A.2d 610 (1995), cert. denied, 516 U.S. 1084, 116 S. Ct. 799, 133 L. Ed. 2d 747 (1996).

## III

The petitioner's final claim is that trial counsel was ineffective in that he failed to interview the four codefendants who would have either exonerated her or given information helpful to her defense. The court found that "[t]he petitioner and her father urged [trial counsel] to interview the codefendants, claiming that they had altered their stories so as to exculpate [the] petitioner. The attorney discussed this with counsel for the codefendants. They refused to allow any such questioning of [their] clients. Under such circumstances, it was not possible for [trial counsel] to question these potential witnesses because of the Rules of Professional Conduct § 4.2."[2]

We agree with the court that under the then existing circumstances, trial counsel could not have questioned the codefendants. The petitioner claims that because Ruiz had pleaded guilty prior to the petitioner's trial, trial counsel could have discussed the case with her. Ruiz was still represented by counsel at that time because her case had not concluded. She was not sen-

---

[2] Rule 4.2 of the Rules of Professional Conduct provides: "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

tenced until after the petitioner entered her guilty plea and, therefore, was unavailable pursuant to rule 4.2.

The petitioner also alleges that trial counsel was deficient in failing to interview prisoners who were rumored to have heard the codefendants say that although their original statements were inculpatory to the petitioner, they were changing those statements to ones that were more favorable to the petitioner. Trial counsel believed that such statements would be hearsay and not admissible and that the original statements might be admitted for substantive purposes pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). The court did not address this claim other than to note that any such inconsistent statements might be used to attack the credibility of any codefendants who testified at trial.

None of the codefendants was called to testify during the habeas trial as to what they would have said, nor did the petitioner call any of the prisoners who generated the rumors that her codefendants desired to change their inculpatory statements to exculpatory ones. In light of this lack of evidence, the court properly concluded that the failure of the petitioner's counsel to interview the codefendants or the prisoners who had heard the rumors did not constitute ineffective assistance of counsel.

The judgment is affirmed.

In this opinion the other judges concurred.