[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this action, by his amended petition, the petitioner seeks a writ of habeas corpus ordering that the plea entered by him on May 28, 1996 in Docket Number CR95-0478113S and the sentence imposed on that date in the Judicial District of Hartford be vacated and the matter returned to the trial court for further proceedings together with such other relief as law and justice may require.
For reasons hereinafter stated, the petition is dismissed.
The evidence indicates that on May 28, 1996, in the Judicial District of Hartford, petitioner entered a plea of guilty before the Honorable Carmen Espinosa under the doctrine of North Carolina v. Alford, CT Page 14721400 U.S. 25, 37 (1970), to the crime of criminal attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54(a) and accessory to manufacturing a bomb in violation of §§ 53-80a and 53a-8. The pleas were entered with a court indicated sentence of 20 years, execution suspended after nine years followed by five years probation. The court canvassed petitioner and determined that the pleas were voluntary. A presentence investigation having been waived, the indicated sentence was imposed on both counts to run concurrently.
Petitioner was incarcerated in accordance with the sentences imposed and remains in the custody of the Commissioner of Correction. In this action, the petitioner seeks a writ of habeas corpus claiming ineffective assistance of counsel on the part of attorney Ellen Morrissey, the attorney who represented him in pretrial proceedings and at the time the pleas were entered and sentence was imposed.
As a defendant in a criminal prosecution, petitioner was "constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." . . . This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . Pretrial negotiations implicating the decision of whether to plead guilty is a critical stage in criminal proceedings; . . ." Copas v. Commissioner of Correction, 234 Conn. 139,153 (1995). (Citations omitted.)
The general standard to be applied by habeas corpus in determining whether an attorney effectively represented a criminal defendant is set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed. 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice . . . thus, he must establish not only that his counsel's performance was deficient, but as a result thereof, he suffered actual prejudice, namely, that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome of the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome. . . .Bunkley v. Commissioner of Correction, 222 Conn. 444, 445-46, 610 A.2d 592
(1992)." Mercer v. Commissioner of Correction, 51 Conn. App. 638, 640-641
(1999). CT Page 14722
"In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial." Id.
Where petitioner entered a guilty plea, the standard enunciated in Hillv. Lockhart, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985), and quoted in Copas, supra, 234 Conn. 156-57, applies.
In this situation, "the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence for the defense that was not identified because of ineffective assistance of counsel would have been successful at trial . . . [The United States Supreme Court stated that in] many guilty plea cases, the prejudice inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate . . . the determination whether the error prejudiced the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the prejudice inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." (Citation omitted; emphasis added; internal quotation marks omitted.)Henry v. Commissioner of Correction, 60 Conn. App. 313, 313 (2000).
Attorney Morrissey was appointed to represent petitioner shortly after his arrest. It is petitioner's claim that her representation of him fell below the required standard of reasonable competence required and that this lack of competence contributed significantly to his conviction. Petitioner's position, which was supported by an expert witness called on his behalf, was that his attorney failed to adequately investigate the case or develop a workable defense to the charges against him. It was also claimed that the attorney failed to adequately confer with him and his guardian or to advise them of the facts of the case.
It is alleged that petitioner directed his attorney to file discovery requests and other appropriate motions for the purpose of pretrial investigation. The evidence indicates, however, that the Hartford state's attorney's office utilized an open file system. Attorney Morrissey took CT Page 14723 advantage of this system to review the state's file and to make notes on matters in the file. She also obtained a copy of the police report.
Information in the police report was to the effect that several days before September 10, 1995, Rayes Guzman had several altercations with petitioner whose street name was Governor, over locations for the sale of narcotics. During the course of these altercations, Guzman stated that petitioner threatened to kill him.
The report further states that Guzman said he was awake in his apartment at 4:30 a.m. on September 10, 1995, with Kenyatta Duncan. His brother, Ricardo Guzman, was also present but sleeping. At about that time, an object crashed through the closed east side window and landed on the living room floor. He looked out the window and observed Governor and a second party running south down the alley away from the window. He looked back in the living room and observed a pipe bomb with a burning wick. He grabbed the bomb intending to get rid of it when it exploded.
As a result of the explosion, Guzman suffered the loss of two fingers from his right hand and what was described in the report as a severe amputatable injury to his right foot. The report also indicates that Duncan was injured with a large piece of the bomb protruding from his thigh.
The report states that further investigation disclosed the explosion was, in fact, caused by a pipe bomb.
Guzman positively identified petitioner, Governor, as one of the persons he saw running from the building after the bomb had been thrown through the window.
Subsequently, petitioner was arrested and brought to the police station. While at the station, a dog, certified in explosive detection, sniffed petitioner and his clothing. The dog's action indicated explosive residue on petitioner's hand and groin area.
An atomic absorption test also indicated the presence of this type of residue on plaintiffs hands.
At the time of his arrest, the police noted what appeared to be a burn injury in plaintiffs right wrist.
John McCray was subsequently arrested and became petitioner's codefendant. McCray, who was older than petitioner, gave a statement indicating that about two weeks before the attack, petitioner met with him and asked his advice about making a pipe bomb. The two of them CT Page 14724 subsequently made a bomb and on September 10, 1995, petitioner lit the fuse and threw the bomb through the window causing the explosion.
Petitioner's attorney was aware of all of the evidence above summarized.
On April 3, 1996, a pretrial conference was held with the prosecutor and the judge. On the record, an offer was made to resolve the case without trial. The court indicated that in return for a plea of guilty, a sentence of 20 years, suspended after nine years, five years probation with a right to argue for less, or 20 years after nine years, three years probation would be imposed. Attorney Morrissey discussed this offer with petitioner and he rejected the offer. Petitioner confirmed this rejection on the record and the Court indicated that the case would be assigned to the firm jury docket and the offer would not be repeated.
While the case was on the trial list, but before it was assigned for trial, Attorney Morrissey arranged for another pretrial conference. As a result of this conference on May 28, 1996 petitioner agreed to resolve the matter without trial. On the recommendation of his attorney, petitioner entered a plea of guilty, under the doctrine of North Carolinav. Alford, 400 U.S. 25, 37 (1970) to criminal attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a and accessory to manufacturing a bomb in violation of §§ 53a-80a and 53a-8. The agreed sentence was 20 years execution suspended after nine years followed by five years of probation. After a canvass and a finding by the judge that the plea was voluntary, this sentence was imposed. Petitioner is now serving his sentence in the custody of respondent.
Petitioner alleges that he came to court ready to go to trial on May 28, 1996. He claims that he entered his plea of guilty only in reliance on Attorney Morrissey's representation that he had no choice and would probably be convicted and receive a longer sentence if he went to trial.
The recommendation to enter into the plea agreement, plaintiff claims, was faulty and based upon the attorney's failure to properly investigate the case. Petitioner testified that the attorney met with him only twice and never conferred with him about witnesses or a possible defense. Attorney Morrissey's testimony is more believable, however. She testified that she met with petitioner four to five times, conferred with him on the telephone seven times and wrote letters to him. She also stated that she discussed the defense of the case and advised him concerning the progress of the case. She also retained the services of Donald Gates, a private investigator, who also conferred with petitioner about the case on four occasions.
The investigator testified that petitioner gave conflicting information CT Page 14725 and that the witnesses suggested by him would not help his case. For example, petitioner claimed that he was with a girl in a park at the time the crime was committed. When interviewed, the young lady could not confirm this. Petitioner also suggested that his aunt could testify that he was home at the time of the crime. On being interviewed, however, the aunt stated that petitioner left his home with the codefendant McCray not long before the explosion. Guzman was not interviewed because of a concern about tampering with the state's witness.
It was suggested by petitioner's expert that Attorney Morrissey should have considered mitigation of the charges since a jury would have to find the specific intent to kill for a conviction of attempted murder. The prosecution, however, controlled the charges and there was no indication that any lesser included offenses would be considered. Petitioner's expert also testified that Attorney Morrissey should have investigated the scene of the crime to determine the likelihood of Guzman being able to see from the window what he claimed he observed. No such investigation was made, but there was no evidence that if it was made, it would have helped petitioner's case.
At the time of his arrest, petitioner was 16 years old and without a guardian present. His attorney was criticized for not making a motion to suppress the results of the dog sniffing and other tests made at that time. Plaintiffs expert, however, advances no specific legal basis for the suppression motion.
Attorney Morrissey testified that her preparation for trial and the defense of petitioner's case was affected when he communicated to her his desire to resolve the case by plea agreement. This was the reason she requested the pretrial conference before the case was called for trial. Petitioner was looking for a ten-year sentence with execution suspended after five years. When this could not be obtained, he eventually agreed to the sentence imposed.
The expert witness testified to the effect that Attorney Morrissey's handling of petitioner's defense fell below the level of competence required by law and that petitioner was prejudiced by her deficient conduct of his defense. The expert, however, never discussed the case with Attorney Morrissey or Investigator Gates. It must then be found that he did not have all of the facts of the case when he reached the conclusions which he did.
From the evidence, it must be concluded that petitioner has failed to prove that Attorney Morrissey's performance and her investigation and preparation for his defense fell below the required standard of reasonable competence displayed by lawyers in her situation. CT Page 14726
In May of 1996, the attorney was faced with a situation in which petitioner's case would soon be called for trial. He had indicated a desire to enter into a plea agreement. The evidence against him was strong. The state could show motive and a prior threat. There was an eyewitness who would identify petitioner running from the scene just before the explosion. Tests indicated that petitioner had recently handled explosives. It was observed that he had what appeared to be a burn on his left wrist. The codefendant would likely implicate him in the crime.
None of the witnesses suggested by petitioner would be helpful or could be called in his defense. It has not been shown that any new exculpatory evidence would be forthcoming which might change the situation at trial. As Attorney Morrissey pointed out, weaknesses in the state's case could be exploited. There was, however, a strong likelihood of conviction if the case went to trial.
Under such circumstances, it cannot be found that petitioner suffered any prejudice as a result of his attorney's recommendation that he accept the plea agreement then available to him.
Accordingly, petitioner, having failed to prove the allegations of the petition, the petition is dismissed.
Joseph J. Purtill Judge Trial Referee