[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Petitioner brings this habeas petition claiming ineffective assistance of counsel and that but for the. ineffective assistance of counsel, the petitioner would have pleaded not guilty and gone to trial and would have been found not guilty. Petitioner further claims that his guilty plea was not an informed plea. The facts of the underlying case are that on June 24, 1996 in the area of 104 Westbourne Parkway in the City of Hartford the petitioner shot and killed a 23 year old male named Jeffrey Murphy. The victim's cousin, Troy Murphy, witnessed the incident and positively identified the petitioner as the assailant. At a cookout which was held CT Page 5144 on that day on the front lawn of a house on Westbourne Parkway, which both the petitioner and the victim attended, the petitioner had engaged in an argument with the victim which was a continuation of an argument from the previous day. The petitioner testified that he had consumed a couple of "six packs" of beer during the cookout as well as a bottle of Hennessey and that he had also smoked some marijuana. He claimed that Jeffrey Murphy (hereinafter the "victim") had been hostile towards him and followed him as a result of which the petitioner got angry and told the victim to leave him alone. According to the ?petitioner's testimony before the habeas Court,[1] the petitioner had a gun and the victim knew that. He claimed that he felt threatened and that the victim had said to him: "When you don't have your gun, I'll see you. You won't have your gun all the time" and pointed his finger at the petitioner. The petitioner pulled out his gun and attempted "to strike the victim with it. The victim ran off. Petitioner claimed he was angry and cocked the gun and fired shots in the direction of the victim. He testified that he didn't want to kill but he wanted to wound him and that the shots that he had fired hit the victim as the victim was going up an incline which shot resulted in his death.
The main claims in this habeas action brought forth at the trial of same on October 12, 2000 were that his attorney, a privately retained attorney, Joseph Elder, hereinafter "Elder", was ineffective in that he did not investigate or raise a defense of Extreme Emotional Disturbance (hereinafter "E.E.D."), that he gave no advice to the petitioner and most importantly that Elder indicated to him when a plea bargain agreement was finally reached for a 32 year sentence for murder under CGS Section 53a-54a
that he, the petitioner, would only have to serve half of his sentence or 16 years. Petitioner claims that this representation was made to him notwithstanding that CGS Section 54-125a precluded any right to parole for a violation of CGS Section 53a-54a. The petitioner pleaded guilty under the Alford Doctrine on January 22, 1998.
STANDARD OF REVIEW:
"A convicted defendant's claim that counsel's assistance was so defective as to require a reversal of the conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable . . . The first component, generally referred to as the performance prong, requires that the petitioner "show that counsel's representation fell below an objective standard of reasonableness" . . . A fair assessment of an attorney's performance requires that every effort be made to eliminate CT Page 5145 the distorting effects of hindsight, to reconstruct the circumstances as to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that under the circumstances, the challenged action might be considered isound trial strategy . . . Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment." (Citations omitted) Strickland v.Washington, 466 U.S. 668 (1984). Henry v. Commissioner of Correction,60 Conn. App. 313, 316, 317, 318 (October 10, 2000).
"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." Henry v. Commissioner, supra 318. Just as in the case at bar the petitioner's plea of guilty was under the Alford doctrine. Petitioner, in his brief, has cited Hill v.Lockhart, 474 U.S. 52, 57-58 (1985) for the proposition that guilty pleas as opposed to results after a trial should be addressed differently. However, in Hill v. Lockhart, supra, the Court determined that the same two-part standard applies to claims arising from the plea negotiations process land that the same justifications for imposing the prejudice requirement in Strickland were relevant in the context of guilty pleas . . . The Hill court, in discussing the "prejudice" inquiry in guilty plea cases, indicated that the assessment of whether an "ineffective" counsel may have "deprived a petitioner will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial"Hill v. Lockhart, supra 59. It went on to state that "[a]s we explained in Strickland . . . these predictions of the outcome at a possible trial, where necessary, should be made objectively . . ."
DISCUSSION:
Based upon the above standard, the Court will now address the claims of the petitioner as to ineffective assistance of counsel. First mentioned at the habeas trial was the claim that petitioner had consumed a substantial amount of liquor prior to the shooting. No evidence was offered that he was intoxicated, however. Further, in Daniel v.Commissioner of Correction, 57 Conn. App. 651, 681 (May 2000), the Court stated "in any event, the state of being intoxicated does not, without more, establish the lack of intent to cause death" (citations omitted). CT Page 5146
Secondly, as to the E.E.D. defense, as noted in Henry v. Commissionerof Correction, supra, the Court stated: "We also note that the petitioner presented no psychiatric evidence at the habeas trial in support of these claims. The habeas court properly rejected this claim." Id. 319. Attorney Elder who has had an active law practice in the Greater Hartford area for the last fifteen years, primarily in criminal matters, testified in the habeas trial. He claims to have talked to the petitioner dozens of times both "at the courthouse and on the telephone. He states that he rejected the E.E.D. defense despite the fact that petitioner's mother told him of some emotional issues. However, the reasons he stated for rejecting the E.E.D. defense were as follows:
 1. He was shown respondent's Exhibit A, a letter from the petitioner to a friend dated July 29, 1996, approximately one month after the killing. He stated that the petitioner was very candid in the letter and that the letter indicated that there was some amount of premeditation on the part of the petitioner. The letter does show no remorse on the part of the petitioner and even goes to the point of making a threat. "I know when them __________ (referring to those who allegedly signed statements against him) come through here I'm going make sure they get tore out the frame."
 2. Elder stated that he talked to the petitioner about Troy Murphy's statement as an eyewitness to the killing and what other evidence there was against the petitioner. He told him that the shirt that belonged to the petitioner was tested and gun powder residue was found thereon.
 3. Elder believed that an E.E.D. defense would not be successful without the petitioner's testimony. That is, of course, a trial tactic or strategy with which this Court cannot quarrel. This Court was the trial judge in the retrial of State of Connecticut v. David Copas, in which several psychiatrists and psychologists testified for both sides. Copas did not testify, and the E.E.D. defense was not successful. In the case of State vs. Angelo Joyner which this Court reviewed in trying the habeas case of Angelo Joyner v. Commissioner, the defendant used a defense of not guilty by reason of insanity, but the defendant did not testify. This defense was unsuccessful at CT Page 5147 trial. Elder stated that if he had the petitioner testify, he was concerned that his credibility would be impeached because of his prior record of assault second with a firearm and assault third.
Elder testified that he was aware that if the petitioner had gone to trial, the state's attorney would have added a charge of commission of a felony with a firearm which would add an additional five year mandatory minimum to the petitioner's sentence. Additionally, he would be found in violation of probation with three years likely to serve on that. He pointed out that the state's attorney was taking a "hard line" because on his previous conviction for assault second degree with a firearm in which he had fired a gun at an individual the bullet of which grazed the individual's head, the Court gave the petitioner a suspended sentence, and the state believed that the petitioner had been given a tremendous break on that previous charge. Elder also felt that if the petitioner used the E.E.D. defense, he would be in effect admitting the killing,[2]
and in that situation even if the E.E.D. defense worked, he would be found guilty of Manslaughter with a Firearm which carries a sentence of forty years imprisonment. He felt that the best that could be hoped for after a trial would be a forty year sentence,[3] and the petitioner was exposing himself to a sixty year sentence for murder. CGS Sec. 53a-54a
(Murder) states that an E.E.D. defense shall not "preclude a conviction for manslaughter in the first degree or any other crime". Emphasis added. This would include manslaughter with a firearm.
As for the petitioner's claim that he was told by Elder that he would serve on a thirty-two year sentence only 50% or sixteen years, that could be ineffective assistance of counsel in that there was no parole for murder and allegedly the petitioner relied on the sixteen years in pleading guilty. There is some evidence that Elder did so advise him based upon not only the petitioner's testimony but the transcript of the hearing at the time of sentencing in which Elder is quoted as follows: "he's certainly got a long time to think about it. And I've encouraged him to look at some other options, like pardon, Board of Parole board. But I've explained to him that he's going to really have to do some hard work in terms of rehabilitating himself and changing his life around while incarcerated if he wants to get some consideration later down the road." Elder does not remember saying that but stated that if he did, he might have been referring to the Board of Pardons of which he happens to be present member, or that after a long day of negotiating a plea bargain such a comment was in his stream of consciousness or thought. However, he flatly denied telling the petitioner that he would only have to serve sixteen years of a thirty-two year sentence before being eligible for parole. of course, in determining this issue, the Court has to evaluate the credibility of the witnesses, their demeanor on the witness stand, CT Page 5148 the consistency or inconsistency of their statements, the manner in which they answered questions and the ability to remember or not remember certain facts. In assessing the credibility of these two witnesses, notwithstanding the portion of the transcript mentioned above, this Court has to give the edge to Attorney Elder. He is an experienced attorney in criminal law which is his specialty, and it is hard for this Court to conceive that he would give such advise. Based upon a preponderance of the evidence, the petitioner has not sustained his burden to prove that he was given the advice that he would only have to serve sixteen years of a thirty-two year sentence before he would be eligible for parole.
Assuming arguendo that such statement was made by Attorney Elder to the petitioner, this Court finds that the petitioner has not met the second prong of Strickland, supra. In view of the physical facts of the shooting combined with the availability of witness testimony which is consistent with the State's theory of the case, this Court is not persuaded that there is a reasonable probability that a trial following a plea of not guilty would have resulted in a more beneficial outcome to the petitioner. Counsel's failure, if there was any, in advising the petitioner that he would only have to serve half of the thirty-two year sentence before being eligible for parole does not undermine this Court's confidence in the judgment of guilty. Despite the petitioner's protestations that he would have pleaded not guilty and gone to trial, the Court finds this unlikely once he had digested the evidence against him, the lack of an E.E.D. defense, and Elder's advice that the best he could hope for was conviction of manslaughter with a firearm which carries a maximum sentence of forty (40) years.[4] At the time of sentencing the 85% rule was still in effect, which means he could not be eligible for parole until he served 40.8 years. The petitioner would likely have pleaded guilty and not gone to trial.
However, under all the circumstances, based upon the standard of review cited above this Court does not believe a trial of the charges would have been beneficial to the petitioner but rather would have resulted in a finding of guilty whether murder or manslaughter with a firearm[5] and resulted in a longer sentence than the sentence he received as a result of the plea bargain. It should also be noted that if he were convicted only of manslaughter with a firearm, he would still, under the law at the time, have to serve 85% of his sentence (34 years before being eligible for parole) which would still be more than the thirty-two years that he did receive.
In summation, this Court finds that Attorney Elder's conduct was questionable as to stating petitioner's eligibility for parole, but effective as to the result obtained. The Court further finds that if the petitioner had pleaded not guilty and gone to trial the outcome of the CT Page 5149 trial would probably have been worse than the thirty-two year sentence he received as a result of the plea bargain.[7] Consequently, the petitioner has not satisfied either prong of Strickland, supra.
For all of the foregoing reasons the petition for habeas corpus is dismissed.
Rittenband, JTR