[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner, Emmanuel Ford, raises the following claims in his Third Amended Petition, dated March 9, 2001: that he was denied the effective assistance of counsel at the trial level because his trial attorney 1) coerced him into entering a guilty plea under Alford[1] by telling the petitioner he would only serve 13-16 years of the sentence; 2) failed to investigate the effects long-term alcohol and drug abuse had on the petitioner's ability to comprehend the plea bargain and entry of plea; and 3) failed to investigate the fact that petitioner's learning disability prevented him from understanding the sentence as it was imposed. Petitioner's Third Amended Petition, at 2. These alleged failures deprived the petitioner of his federal and state rights to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Connecticut Constitution.
After a trial on the merits, during which the Court heard testimony from Mr. Ford as well as Gerard Smyth, his former trial counsel, the Court concludes that the claims of ineffective assistance of counsel are without substance. The petition for a writ of habeas corpus, therefore, is denied.
 INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD
"What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation. The habeas court may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." (Internal citation omitted.) Beasleyv. Commissioner of Correction, 47 Conn. App. 253, 264, 704 A.2d 807
(1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998).
"A convicted defendant's claim that counsel's assistance was so CT Page 10511 defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, ___ A.2d ___ (2000).
"The first component, generally referred to as the performance prong, requires that the petitioner show that counsel's representation fell below an objective standard of reasonableness. In Strickland, the United States Supreme Court held that judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a petitioner to second guess counsel's assistance after a conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense, after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable and professional judgment.
"Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Id., 317-8.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in CT Page 10512 which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, 151, 662 A.2d 718 (1995).
"In Hill v. Lockhart, the court determined that the same two-part standard applies to claims arising from the plea negotiation process and that the same justifications for imposing the prejudice requirement inStrickland were relevant in the context of guilty pleas. Although the first half of the Strickland test remains the same for determining ineffective assistance of counsel at the plea negotiation stage, the court modified the prejudice standard. As in Strickland, the prejudice standard for plea negotiations is intended to determine whether, but for counsel's constitutionally deficient performance, the outcome of the plea process would have been different. The court went on to require that in order to satisfy the prejudice requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . The Hill court also stated that the petitioner must show that such a decision to plead not guilty would have been based on the likelihood that the introduction of the evidence or the defense that was not identified because of ineffective assistance of counsel would have been successful at trial." (Internal citations and quotations omitted.) Id., 156.
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [supra, 47 Conn. App. 264]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998). "A court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice." Nardini v. Manson, supra, 207 Conn. 124.
 FACTUAL FINDINGS AND PROCEDURAL HISTORY
On April 25, 1989, Reginald Haywood died as a result of three gunshot wounds, one to the left lower arm, one to the chest, and one to the right lower back. Respondent's Exhibit 3 (Aug. 29, 1989 Autopsy Report), at 2-3. The cause of death, according to the autopsy conducted on April 26, 1989, was certified as "gunshot wounds of chest and abdomen" by the CT Page 10513 medical examiner. Id., at 1 and 4. The police arrested the petitioner on July 19, 1989, for the shooting death of Reginald Haywood. Petitioner's Exhibit A, at 6; also see Respondent's Exhibit 1 (Aug. 30, 1989 Tr.), at 37. On August 30, 1989, subsequent to a probable cause hearing, the petitioner pleaded "not guilty" to one count of murder in violation of C.G.S. § 53-54 (a) and to one count of capital felony murder in violation of C.G.S. § 53a-54b(2), also electing to be tried by a jury of twelve on both counts. Id., at 53-55.
The matter did not proceed to trial, however, for on December 6, 1990, the petitioner entered a guilty plea under Alford to one count of murder in violation of 53a-54 (a). Petitioner's Exhibit A, at 1. A pre-sentence investigation was ordered in preparation for sentencing. On January 25, 1991, the petitioner was sentenced to a term of fifty (50) years, execution suspended after thirty-six (36) years, with five (5) years of probation. Id., at 1.
The petitioner filed this habeas corpus petition on January 27, 1993, alleging ineffective assistance of counsel by his trial counsel, Gerard Smyth.[2] A trial on the merits was conducted before this Court on April 12, 2001, during which the petitioner and Attorney Smyth testified regarding the underlying events. Additional facts or procedural history will be addressed where necessary for the resolution of the petitioner's claims.
 I
The petitioner's first claim alleges that Attorney Smyth coerced him into pleading guilty under Alford by telling him that he would only serve 13-16 years of the sentence. In support of this claim, the petitioner testified at the habeas corpus trial that his understanding, at the time of sentencing, of pleading guilty under Alford was that he was not admitting to the crime, but that he could come back into court if new evidence became available at a later time. Attorney Smyth, according to the petitioner's testimony, informed the petitioner that he would actually serve 15-17 years of the imposed sentence of fifty years, execution suspended after thirty-six years. The petitioner at the time of sentencing believed his sentence would be reduced while in prison by earning work or good time credits, understanding that the awarding of good time requires good behavior and that good time can be forfeited for misbehavior. The petitioner indicated that Attorney Smyth even wrote the number "17" on a piece of paper when discussing the sentence and actual time to serve.
It was only because of Attorney Smyth's representation to the petitioner that he would actually serve 15-17 years that, according to the CT Page 10514 petitioner, he was willing to enter into a plea agreement. In fact, the petitioner testified that he never wanted to accept the plea agreement and that he did not speak up when the sentencing judge imposed the sentence because he did not want to upset the judge. The petitioner also indicated to this Court that he discussed possible sentences with Attorney Smyth only on December 5, 1990, that he made up his mind on December 5th to plead guilty, and that he was returned to the Bridgeport Correctional Center. The petitioner testified that he smoked marijuana during the evening of December 5th while he was at the facility awaiting transportation back to New Haven on December 6th for resumption of jury selection. Lastly, the petitioner noted that the effect of smoking marijuana the night after deciding to change his plea, but before actually changing his plea on December 6th was that it made accepting the plea and resultant sentence much easier.
On direct examination Attorney Smyth testified that he represented the petitioner for approximately one year prior to the change of plea. Attorney Smyth specifically denied that he coerced Mr. Ford into entering an Alford guilty plea. The respondent submitted Attorney Smyth's notes made December 10, 1990, four days after the change of plea, and they were entered into evidence as Respondent's Exhibit 2.[3] Though these notes were made from memory, according to Attorney Smyth, they are accurate and represent his attempt to memorialize in detail events from November 28, 1990, through December 6, 1990. Instead of supporting the petitioner's claims that he had no interest in pleading out and never addressed pleading guilty until December 5th the notes reveal a defendant who actively participated in ongoing plea negotiations.
Attorney Smyth testified on direct examination that the petitioner's allegation that the only time he discussed plea negotiations with his attorney was on December 5th or 6th was incorrect, as is born out in counsel's notes. Attorney Smyth further testified that it was his understanding that if the time to serve was acceptable to Mr. Ford, that he would plead guilty. Attorney Smyth also indicated that Mr. Ford was an effective communicator and expressed himself well, and was competent and assisted in his defense. If anything, Mr. Ford was very engaged in the plea negotiations and the offer/counteroffer process of the negotiations. As to the petitioner's claim that he was influenced by having smoked marijuana the evening prior to the change of plea, Attorney Smyth stated that his client did not appear to be under the influence of any substance on December 6th. To the contrary: Mr. Ford was aware of and appeared to understand the proceedings, understood the evidence against him, and understood the nature of the plea as well as the sentence.
Lastly, Attorney Smyth testified that he did not indicate to Mr. Ford that he would only serve 15-17 years of the imposed sentence. Though he CT Page 10515 did show Mr. Ford what credits he might be eligible for (e.g., statutory good time, work time, and 120 days meritorious), Attorney Smyth also informed his client that these various credits had to be earned. Attorney Smyth represented to this Court that if he had calculated the actual time to serve based on the imposed sentence, he would have arrived at a number closer to twenty-five years as being the lowest possible number, not seventeen years or lower. The Court, based on the foregoing, finds the petitioner's claim that counsel informed him he would only serve approximately fifteen years of a thirty-six year term as not being credible.
Contrary to the petitioner's assertion that he was somehow coerced by his counsel and that he never considered pleading as an option until December 5th the evidence in this case clearly indicates that the petitioner was an active participant in the plea negotiations. Ultimately, a capital felony conviction was avoided by the reaching of a settlement. As counsel testified at the habeas corpus trial, his recommendation to accept the plea agreement was based on the potential exposure his client faced — a life sentence without the possibility of parole for a conviction on the capital felony murder charge. "A defendant relies heavily upon counsel's independent evaluation of the charges and defenses, applicable law, the evidence and the risks and probable outcome of a trial." Copas v. Commissioner of Correction, supra,234 Conn. 154.
Though the outcome of the jury trial cannot be determined with any certainty, testimony by witnesses at the probable cause hearing such as Joseph Covington, an eyewitness to the shooting of Reginald Haywood; Respondent's Exhibit 1, at 7; and Keith Spruill and Officer Gilbert Burton, who both testified at the probable cause hearing that Mr. Ford told them that he had been paid to kill the victim; Id., at 26 and 38, respectively; would influence counsel's evaluation of the case. Similar testimony by these witnesses at the trial itself would not have enhanced the chances of exoneration of the petitioner.
The Court finds that the petitioner has not shown that counsel's representation fell below an objective standard of reasonableness, nor has he shown that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. Nor has the petitioner proven, as required byHill that he would have pleaded "not guilty" based on the likelihood that the introduction of evidence or a defense that was not identified because of ineffective assistance of counsel would have been successful at trial. In fact, the petitioner's first claim does not allege ineffectiveness arising out of failure to investigate or discover evidence or advise him of an affirmative defense that would likely change CT Page 10516 the outcome of the trial. The petitioner merely alleges that counsel coerced him into pleading guilty by substantially understating the time that would actually be served. A review of the record before this Court does not substantiate the allegation that counsel was ineffective because he coerced the petitioner into pleading guilty. Consequently, the petitioner's first claim is without merit.
 II
In his second claim, the petitioner alleges that his trial counsel failed to investigate the effects long-term alcohol and drug abuse had on the petitioner's ability to comprehend the plea bargain and entry of plea. What this claim apparently alleges is that upon Mr. Ford's participation in the plea bargain process and actual entry of the guilty plea, his counsel was ineffective because he failed to investigate the potential impact Mr. Ford's long-term substance abuse had on the just-completed bargaining process and entry of plea. There is no support for such a claim.
The petitioner testified on direct examination that he had abused alcohol from 1986 until 1990, consistently drinking approximately forty to eighty ounces of alcohol per day, and that he smoked marijuana every day. Additionally, as previously addressed in the discussion of the first claim, the petitioner claims that he smoked marijuana the night before he changed his plea. See discussion infra, at 7.
The petitioner testified on cross-examination that he obtained his GED in either 1992 or 1993, shortly after being sentenced in this case. And as the prior section's discussion has already demonstrated, Attorney Smyth, who represented Mr. Ford for approximately one year prior to the change of plea, had no indication on the plea date that his client was under the influence of any substance. See infra, at 8. Attorney Smyth also indicated that Mr. Ford was an effective communicator and expressed himself well, and was competent and assisted in his defense. If anything, Mr. Ford was very engaged in the plea negotiations and the offer/counteroffer process of the negotiations. Attorney Smyth testified that he had Mr. Ford undergo psychological evaluation in preparation for the trial.[4] This testing indicated that Mr. Ford was of average intelligence.
Aside from the foregoing, there is no other evidence before this Court regarding the petitioner's second claim. The Court, therefore, finds that the petitioner has failed to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial, and that his defense would have likely been successful at trial. The petitioner has not shown in any way that his counsel would have changed his CT Page 10517 recommendation as to the plea. The record is void of any support for the claim that the petitioner did not fully understand the bargaining process, which he actively participated in, or that he did not comprehend the Alford guilty plea. By way of example, the petitioner's testimony in support of his first claim that he understood at the time of sentencing that pleading guilty under Alford meant that he was not admitting to the crime directly; see infra, at 6; undermines his second claim. The Court finds that the petitioner's second claim also has no merit.
 III
The last claim advanced by the petitioner alleges that his counsel failed to investigate the fact that the petitioner's learning disability prevented him from understanding the sentence as it was imposed, namely fifty years, execution suspended after thirty-six years, with five years probation. Aside from the petitioner's testimony at the habeas corpus trial that prior to and up to 1991 he had suffered from Attention Deficit Disorder, which affected his attention and ability to focus on a problem, there is no other evidence before this Court to support this claim.
Attorney's Smyth's testimony that he had the petitioner undergo a psychological evaluation, said evaluation indicating that the petitioner was of average intelligence, as well as testimony that the petitioner was an effective communicator who played an active role in the negotiations process, indicates to this Court that there does not appear to be anything that prevented Mr. Ford from understanding the sentence as it was imposed. The petitioner's testimony that he earned his GED shortly after beginning the imposed sentence, without any evidence regarding how he overcame his supposed learning disability, further weakens his claim. The Court finds that the petitioner's third claim is entirely non-meritorious.
 CONCLUSION
This Court finds that the petitioner has failed to show that he was coerced by his counsel into pleading guilty under Alford. The petitioner has not shown that his counsel's performance was deficient, nor has he shown under the Hill-modified Strickland test that he was prejudiced. The petitioner has also been unable to substantiate in any way that his counsel failed to investigate aspects of the petitioner's background that prevented him from either understanding the plea bargain and entry of plea or understanding the imposed sentence.
The Court further finds that the far more credible evidence was presented at the habeas corpus trial by the respondent. The petitioner has CT Page 10518 not demonstrated that his trial counsel's performance fell below the standard of reasonable competence. This Court, therefore, denies the petition for a writ of habeas corpus.
By the Court,
HON. DAVID M. BARRY, JTR