[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner was found guilty by a jury of murder and sentenced to a term of thirty-five (35) years. The conviction was appealed to the Supreme Court, which affirmed the conviction in State v. Cruz,212 Conn. 351, 562 A.2d 1071 (1989). The pro se petition for writ of habeas corpus was filed March 22, 1993, said petition being amended on August 19, 1996. The matter was tried to the Court (Zarella, J) on November 20, 1998. An order entered on the date of trial indicated that the Court would set a post-trial briefing schedule after receipt of the habeas trial transcripts. On March 24, 1999, the Court issued the briefing schedule. The petitioner's posttrial brief was filed May 18, 1999; respondent's brief was filed June 15, 1999. The trial court not having rendered a decision, the petitioner filed a Motion for New Trial on March 1, 2000, which was granted on May 5, 2000 (L. Paul Sullivan, J.).
The petition subsequently was further amended on November 14, 2000. The petitioner, who currently is in the custody of the Commissioner of Correction, alleges in this revised Amended Petition that his trial counsel provided ineffective assistance of counsel in that counsel failed to: 1) effectively cross-examine the State's witnesses at trial; 2) investigate and call witnesses; 3) present exculpatory evidence; 4) properly object to the trial judge's instruction to the jury concerning the testimony of Melvin Riley; and 5) object to the judge's instruction with respect to Melvin Riley in his final charge. Am. Pet., at 2. A trial on the merits was heard before this Court on November 6, 2001, during which the petitioner and his former trial counsel, Attorney Joseph Mirsky, testified. Additionally, the parties stipulated to enter the November 20, 1998 trial exhibits in their entirety as full exhibits in this trial. Tr. (11/6/2001), at 2-3.
"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of the conviction has two components. First, the petitioner must show that counsel's performance was deficient. Second, the petitioner must show that the deficient CT Page 2885 performance prejudiced the defense. Unless a petitioner makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. Stricklandv. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984); Aillon v.Meachum, 211 Conn. 352, 357, 559 A.2d 206 (1989); Fair v. Warden,211 Conn. 398, 402, 559 A.2d 1094, cert. denied, 493 U.S. 981,110 S.Ct. 512, 107 L.Ed.2d 514 (1989)." Henry v. Commissioner of Correction,60 Conn. App. 313, 316-7, 759 A.2d 118 (2000). "Even if a petitioner shows that counsel's performance was deficient, the second prong, or prejudice prong, requires that the petitioner show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Internal citations and quotations omitted.) Id., 317-8. Also see Commissioner of Correction v. Rodriguez, 222 Conn. 469, 477,610 A.2d 631 (1992).
"A reviewing court can find against the petitioner on whichever [Strickland prong] is easier. Valeriano v. Bronson, 209 Conn. 75, 85-6,546 A.2d 1380 (1988); Nardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69
(1988); Magnotti v. Meachum, 22 Conn. App. 669, 674, 579 A.2d 553
(1990); Beasley v. Commissioner of Correction, [47 Conn. App. 253, 264,704 A.2d 807 (1997), cert. denied, 243 Conn. 967, 707 A.2d 1268 (1998)]."Petaway v. Commissioner of Correction, 49 Conn. App. 75, 76 n. 2,712 A.2d 992 (1998).
The petitioner first alleges that his attorney failed to effectively cross-examine the state's witnesses at trial. Specifically, the petitioner claims that a "careful review of the [trial] transcript reveals . . . a poorly conducted cross-examination of all the state's witnesses by the defense, underscored by a rambling, non-sensical closing statement which reveals that there was no defense theory of the case[.]" Pet'r. Br., at 1. At the habeas corpus trial, however, the petitioner only testified that his trial counsel was ineffective for failing to properly cross-examine Allison Craddock, a state's witness who testified against the petitioner at his criminal trial. Tr. (11/6/2001), at 13. According to the petitioner, Allison Craddock supplied an affidavit to the petitioner in which Allison Craddock "claims that the reason he testified [against the petitioner at the criminal trial] was because . . . [the state] had made a deal with him in return for his testimony." Id. The petitioner also testified that he asked Attorney Mirsky to investigate the supposed deal between the state and Allison Craddock, but the petitioner "guess[ed] he never did cause then later on [the petitioner] got an affidavit signed and notarized from [Allison Craddock]." Id. This affidavit, however, was not proffered as evidence in the habeas case, nor CT Page 2886 was testimony presented by Allison Craddock.[1]
Attorney Mirsky testified that he had practiced law in Connecticut from 1952 until the present, which entails almost forty years at the time of the petitioner's underlying criminal trial, that a majority of his personal practice was comprised of criminal law, and that he had tried at least twenty or thirty criminal cases in Bridgeport alone at the time of the petitioner's trial. Id., at 7-8. This Court finds the petitioner's testimony that he advised Attorney Mirsky of a deal between the state and Allison Craddock and requested that this be investigated, and that Attorney Mirsky failed to investigate a potential opportunity to attack the credibility of one of the state's eyewitnesses, to be not credible. In fact, Attorney Mirsky attacked Allison Craddock's credibility by questioning him about a felony conviction; Pet'r Ex. B (Tr. 10/29/1988), at 259-60; even though that conviction occurred approximately six months after the shooting for which the petitioner was prosecuted. Id., at 302.
Furthermore, even if the petitioner successfully proved that counsel's performance was deficient, he has failed to show how was prejudiced in light of the fact that Melvin Riley, another eyewitness, testified at the criminal trial to witnessing events substantially identical to those witnessed by Allison Craddock. And as to the broad claim that Attorney Mirsky poorly conducted cross-examinations of all the state's witnesses, this Court has reviewed the available transcripts and finds that there was nothing deficient in Attorney Mirsky's cross-examinations. The petitioner also claims that counsel presented a "rambling, non-sensical closing statement which reveals that there was no defense theory of the case." The only defense theory in this case was that the petitioner did not commit the crime. The closing statement to the jury included several claims that the petitioner was innocent. Id., (Tr. 11/9/1987), at 910, 928 and 935. Furthermore, trial counsel properly utilized the summation to the jury to review the evidence presented in the case and to apply the law in the petitioner's favor. This Court neither finds that counsel's performance was deficient nor that the petitioner was prejudiced by counsel's summation to the jury.
The petitioner's second claim is that counsel was ineffective for failing to investigate and call witnesses. Specifically, the petitioner alleges that he asked Attorney Mirsky to have pictures taken of the crime scene. Tr. (11/6/2001), at 12. Attorney Mirsky, however, relied on the state's photographs of the crime scene. "Defense counsel will be deemed ineffective for not contacting a witness only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial. The reasonableness of an investigation must be evaluated not through CT Page 2887 hindsight but from the perspective of the attorney when he was conducting it." Baillargeon v. Commissioner of Correction, 67 Conn. App. 716, 727,___ A.2d ___ (2002).
Attorney Mirsky testified that his pretrial investigation included visiting the crime scene, conducting interviews of the petitioner, defense witnesses and some of the petitioner's relatives, as well as reviewing all the discovery of the state's witnesses. Tr. (11/6/2001), at 6 and 8. Attorney Mirsky also testified that the state's pictures accurately depicted the crime scene and that any pictures he would have had prepared would not have helped the defense in this case. Id., at 20-1. The petitioner has failed to show how any additional pictures would have benefited his defense or that Attorney Mirsky's investigation was unreasonable. Consequently, the petitioner has failed to prove that counsel's performance was deficient or that he was somehow prejudiced.
The third claim made by the petitioner is that counsel failed to present exculpatory evidence. Exculpatory evidence is "evidence tending to establish a criminal defendant's innocence." BLACK'S LAW DICTIONARY 577 (7th ed. 1999). At the habeas corpus trial, the petitioner testified that such potentially exculpatory evidence included "when the detective called the medical examiner and told him this was at eleven o'clock at night, told him that there wasn't a suspect in the case — for the time being. Meanwhile at eight o'clock . . . they were taking a statement from Allison Craddock saying he was accusing me of committing the crime."Id., at 13.
The entry in the autopsy report indicating that there was no suspect at the time the medical examiner's office received the phone call from the police department was redacted by the court after its conclusion that the entry was hearsay. Pet'r. Ex. B (Tr. 11/3/1987), at 500-2. Petitioner's trial counsel made strenuous efforts to keep the entry in the report;Id., at 488-500; and took an exception to the court's ruling. Id., at 501. This Court concludes that the petitioner has failed to prove that counsel's efforts at trial were deficient and that there is a reasonable probability that the result of the proceeding would have been different.
The only other evidence identified by the petitioner as being potentially exculpatory is a medical report dated September 20, 1986. Pet'r. Ex. A. This medical report is alleged to support the petitioner's claim that he could not have committed the shooting because at the time his right arm was injured as a result of a fall. Tr. (11/6/2001), at 14-6. The petitioner also testified that at the time of the shooting, his arm was bandaged and in a sling. Id., at 16. Lastly, the petitioner testified that he told Attorney Mirsky about his arm being in a sling.Id. CT Page 2888
The petitioner's testimony was categorically denied by Attorney Mirsky. Id., at 22. The petitioner never indicated to his counsel that his arm was injured and in a sling, nor was there any indication of a sling in the eyewitnesses' statements or testimony. Attorney Mirsky specifically indicated that if the petitioner had told him that his arm was in a sling, that he "would have asked him how he got in the sling, under what circumstances, and if he said he went to the hospital for it, . . . would have subpoenaed — brought in that information." Id. This Court finds not credible the petitioner's testimony that his counsel did not avail himself of this potentially exculpatory evidence.
The petitioner's fourth and fifth claims are that trial counsel both failed to properly object to the trial judge's instruction to the jury concerning the testimony of Melvin Riley and object to the judge's instruction with respect to Melvin Riley in his final charge. Due to their interrelation, these two claims will be dealt with together. Even assuming that counsel was deficient in failing to object to both, the petitioner must still show that the result would somehow have been altered to the petitioner's benefit to meet the second, or prejudice prong, of the Strickland test.
At the criminal trial, Melvin Riley testified that there was a homosexual relationship between the petitioner and the victim, Walter Cothran, KJr State v. Cruz, supra, 212 Conn. 362. Counsel for the petitioner immediately objected and "moved for a mistrial on the grounds that the state's attempt to establish a motive based on a homosexual relationship between the defendant and Cothran lacked a sufficient foundation and created prejudice that could not be erased from the minds of the jurors. The court denied the motion but sustained the defendant's objection to the characterization of the defendant's and Cothran's relationship as homosexual." Id.
"Upon the return of the jury, the court immediately instructed it to disregard Riley's response. The defendant did not take an exception to this instruction. In its final charge, the court again instructed the jury to disregard anything that had been stricken from the record. The defendant made no objections to this instruction." Id., at 362-3. The petitioner argued on appeal that he was so prejudiced by Mr. Riley's testimony "that the impression created was incapable of remedy by the court's curative instructions" and "that his constitutional right to a fair trial by an impartial jury was violated." Id., at 363. The Supreme Court noted while it agreed that "prejudice could have been created by Riley's testimony, [the Supreme Court did] not believe that the defendant, in the context of the entire trial, was so prejudiced that a new trial [was] warranted." (Emphasis added.) Id., at 363-4. Quite CT Page 2889 clearly, the petitioner's fourth and fifth claims arise out of these two references to trial counsel not excepting to an instruction and not objecting to an instruction.
The Supreme Court found that the trial court's immediate instruction to the jury amehorated potential prejudice induced by the testimony. Id., at 365-6. "[T]he [trial] court's final charge included an additional instruction to the jury to disregard any responses that had been stricken." While it is true that the petitioner's trial counsel did not except or object to the two instructions at issue, the petitioner has failed to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. The petitioner's testimony at the habeas corpus trial that Mr. Riley's testimony was fatal to him; Tr. (11/6/2001), at 15; does not rise to the level of showing that there was a reasonable probability sufficient to undermine confidence in the outcome of the criminal trial.
For all the foregoing reasons, the petitioner has failed to prove the claims alleged in the revised Amended Petition. The petition seeking habeas corpus relief, therefore, is denied.
 ___________________ EDWARD C. GRAZIANI, JUDGE