[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Marion L. Miller, alleges in his petition for a Writ of Habeas Corpus originally filed on July 7, 1995 and amended on June 26, 1996, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the Constitution of the State of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges five specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to visit with the petitioner while he was being held in pretrial detention. Second, the petitioner complains that the trial counsel failed to share the results of pretrial discovery with him. Third, the petitioner contends that his attorney knew the mother of one of the victims. Fourth, Mr. Miller alleges that the trial defense counsel failed to adequately prepare him for direct and cross-examination. Finally, he alleges that his trial counsel did not address the issue of a juror who was sleeping during the trial.
This matter came on for trial before the Court on October 17, 2002. The petitioner, the petitioner's sister, Ms Gloria Miller-Clark, and the petitioner's trial counsel, Attorney Gerald Bodell testified at the trial. In addition, the Court received transcripts of portions of the petitioner's trial into evidence, marked as Exhibits 1 through 10. The motion by Attorney Bodell to withdraw as the petitioner's counsel was admitted as Exhibit 11. The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
 Findings of Fact
1. The petitioner was the defendant in the criminal case of State vs. Miller, Docket Number CR6-337756 tried in the Judicial District of CT Page 13035 New Haven where he was charged with violating C.G.S. §§ 53a-54a
(Murder), 53a-54b (Felony Murder) and 53a-59 (Assault in the 1st
degree).
 2. The petitioner was convicted of the charged offenses following a trial to the jury.
 3. The Court, Maiocco, J., sentenced the petitioner to a total effective sentence of sixty-five (65) years to serve.
 4. The petitioner's direct appeal of his case was denied and his conviction upheld by an Appellate Court opinion dated January 3, 1995.[1] State vs. Miller, 36 Conn. App. 506, cert. den. 232 Conn. 912 (1995).
 5. The petitioner was represented by Attorney Gerald Bodell, who had been appointed a special public defender for this case by the Court, Damiani, J..
 6. Attorney Bodell is an experienced criminal law practitioner having had over thirty-five years of combined experience in the states of New York and Connecticut. He has served as a special public defender in numerous cases in both the Superior Court for the state of Connecticut and the federal courts in Connecticut and the Southern District of New York.
 7. The incident that led to the charges of which the petitioner was ultimately convicted occurred in the city of New Haven on February 3, 1991.
 8. The petitioner was arrested on February 5, 1991 and has been in continuous custody since that date.
 9. The victim of the murder was Mr. J.L. who was the father of a Superior Court Judge.
 10. Given the potential for adverse publicity surrounding this case, Attorney Bodell filed a Motion for a Change of Venue, however, that Motion was denied by the Court.
 11. Attorney Bodell represented the petitioner at all pertinent stages of the criminal trial.
12. The petitioner and Attorney Bodell had adequate time in which to meet, confer, formulate defense theory, and prepare for trial. CT Page 13036
 13. These meetings between attorney and client took place, with one exception, at the New Haven courthouse when the petitioner was brought in for court appearances.
 14. Attorney Bodell made only one visit to the Whalley Avenue Correction Center to visit and confer with the petitioner.
 15. The petitioner became disenchanted with Attorney Bodell and asked him to file a Motion to Withdraw his Representation. That motion was denied by the Court, Corradino, J..
 16. The relationship between Attorney Bodell and the petitioner was that of attorney and client. While there was tension and some conflict between the two men, this less than warm relationship did not affect the ability of Attorney Bodell to provide professional representation.
 17. At no time during the representation did the relationship between the attorney and the petitioner deteriorate to the point at which the attorney/client relationship was destroyed.
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandvs. Washington, 466 U. 5. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra
at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
Trial in this Court of a Habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. A CT Page 13037 habeas court, knowing the outcome of the trial, "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commissioner ofCorrections, 47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967
(1998). Here, the evidence of the rocky relationship between Attorney Bodell and the petitioner is colored by the fact that the petitioner has been convicted of the crimes with which he was charged. Had the result been more favorable to the petitioner, it is likely that he would have had a different opinion of his attorney. In light of this, more than likely, natural human response, "[a] fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry vs. Commissioner of Correction, 60 Conn. App. 313
at 317 (2000).
In essence, the petitioner has alleged that he and his trial counsel did not have a warm interpersonal relationship, and that this constitutes ineffective assistance of counsel, per se. The Court is not going to adopt such a rule. What is constitutionally required is that the attorney must perform in a satisfactory manner, not that the attorney and his client have respect, camaraderie or good fellowship between them. One need only consider the example of John Adams who was an ardent advocate, perhaps even zealot, in the cause of American Independence from England. Despite his well-known and loudly proclaimed dislike for the way England treated the American colonies, he was one of the defense counsel for the British soldiers accused of murdering five Americans in the Boston Massacre. Surely, Mr. Adams was unlikely to have approved of the actions of the soldiers, yet he was instrumental in securing their acquittal.[2]
An attorney's personal feelings towards his or her client are, therefore, immaterial to whether the attorney does a proper job in representing that client. There simply has been no proof that Attorney Bodell performed in anything other than a satisfactory manner. The petitioner was kept adequately advised of developments in his case, attended all court proceedings, had access to the documents in the possession of his attorney, listened to all testimony and other discovery. He was properly prepared for direct and cross-examination by Mr. Bodell. While the petitioner may have been desirous of additional visits by Attorney Bodell, there was, notwithstanding, sufficient time in which the attorney and client could engage in proper pretrial preparation. CT Page 13038
More importantly, however, the petitioner has failed to demonstrate any prejudice that befell him as a result of the relationship between Attorney Bodell and himself. It is not necessary to even consider whether a trial counsel's performance was deficient if the Habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Stricklandv. Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson, 209 Conn. 75 at 86 (1988). Where there has been no proof of any prejudice, the Court has no choice but to deny the petition for a Writ of Habeas Corpus.
There are two additional matters that are worthy of comment at this point. First, the allegation that the trial attorney knew the mother of one of the victims was totally unsubstantiated at trial. While it is possible that trial defense counsel may have at one time identified the mother of the victim for the petitioner's sister, that, in and of itself is no proof that Attorney Bodell had ever made the acquaintance of Mrs. Codianni. Indeed, the evidence is unequivocal that, at the time of the petitioner's trial, Attorney Bodell did not know Mrs. Codianni.[3]
Second, there has been testimony by the petitioner that he noticed a juror sleeping at one point during the state's case in chief. The petitioner testified that he called this fact to his attorney's attention and that Mr. Bodell said he would take care of it. Unfortunately, there is no corroboration of this from any other source. In fact, Mr. Bodell did not notice any sleeping juror and denied that this conversation with his client ever took place. Beyond that, however, since the incident (if it occurred at all) would have taken place during a direct examination in the state's case, there is little to no likelihood that a juror's inattention at that point would inure to the detriment of the petitioner.
The petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. To be sure, the credibility of the surviving victim and the petitioner were pitted one against the other. It is likewise clear that the jury resolved that contest against the petitioner. Nevertheless, even had the petitioner and his counsel been the closest of friends and in constant contact the Court fails to see any proof that this could have done anything to undermine the jury finding the testimony of the surviving victim to be more credible than that of the petitioner. Accordingly, there is no way that CT Page 13039 this Court can possibly conclude that the petitioner suffered any prejudice as a result of the trial counsel's actions or omissions. Even assuming deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694.
Given the failure of the petitioner to show that the acts or omissions of trial counsel were constitutionally deficient, let alone a showing of any prejudice flowing therefrom, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
 ___________________ S.T. Fuger, Jr., Judge