# MARVIN BEASLEY *v.* COMMISSIONER OF CORRECTION
## (AC 16381)

Foti, Lavery and Healey, Js.

Argued October 1—officially released December 9, 1997

*Craig Lyle Perra,* certified legal intern, with whom were *Timothy H. Everett* and, on the brief, *Jason M. Lipsky,* certified legal intern, for the appellant (petitioner).

*Lawrence J. Tytla,* senior assistant state's attorney, with whom, on the brief, was *Kevin T. Kane,* state's attorney, for the appellee (respondent).

*Opinion*

FOTI, J. This is an appeal from the dismissal of an application for a writ of habeas corpus filed by the petitioner, Marvin Beasley. The petitioner was convicted of reckless manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3),[1] as a lesser included offense of murder, General Statutes § 53a-54a. On direct appeal, we affirmed the judgment of the trial court. *State* v. *Beasley,* 29 Conn. App. 452, 615 A.2d 1072 (1992).[2] Following the habeas court's dismissal of his petition, the petitioner filed a request for certification to appeal to this court, which was granted.

On appeal, the petitioner claims that he was denied effective assistance of counsel when his trial attorney failed to request lesser included offense instructions on second degree manslaughter and criminally negligent homicide. We affirm the judgment of the habeas court.

The habeas court determined that evidence presented at the trial showed[3] that on the evening of May 9, 1989, at approximately 9 p.m. in the vicinity of 40 Crystal Avenue, a multifamily, low income, high rise apartment complex located in New London, the petitioner fatally shot David Stewart with a semiautomatic .45 caliber

---

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] On direct appeal to this court, the petitioner's sole claim involved an abuse of discretion in his sentencing.

[3] Because our opinion on the direct appeal, *State* v. *Beasley,* supra, 29 Conn. App. 452, does not set forth the facts that the jury reasonably could have found, we use the habeas court's determinations, as set forth in its memorandum of decision, for that purpose.

pistol. Earlier that day, the petitioner had obtained the pistol and bullets from a friend, Lewis Thomas, in anticipation of meeting the victim. Thomas had shown the petitioner how to use the pistol. The petitioner had been having difficulty with the victim, who had acted in a threatening manner toward him. The petitioner claimed that he wanted a meeting with the victim to resolve their dispute peacefully. He claimed that he brought the pistol with him for the purpose of scaring the victim should that become necessary. He stated that he "needed to scare him off." He indicated that on one prior occasion he had seen a friend of his successfully intimidate the victim by gesturing toward him as though he had a pistol in his hand. He claimed he also wanted to scare the victim so that the victim would leave him alone if he could not convince the victim to do so through discussion. In his taped statement to the police, which was introduced as evidence during the criminal trial, the petitioner stated that when he arrived at the Crystal Avenue apartments, he first went into his mother's apartment and then he loaded the pistol on the staircase before exiting the building. In his taped statement, the petitioner stated: "I picked up the gun and my friend came with me. And we go down to Crystal Avenue and we were standing outside. Then Dave [the victim] was out there again. He was riding on a bike. So he said, 'You want to fight? Want to fight now?' I said, 'Dave just leave it alone.' He said, 'No.' I said, 'Then do whatever you want to do.' And then he started to reach in his jacket. And then that's when I got scared and I pulled out my gun and shot him. Then I ran."

The petitioner fired seven rounds, five of which struck the victim. The victim was struck once in the back, twice in the buttocks, once in the back of his left upper leg and once through his left hand. In his taped statement, in response to a police officer's question concerning what the victim did once the petitioner

started to fire the pistol, the petitioner stated: "He was running. He ran, then I guess I hit him in the leg. That's when he fell. . . . I missed him a couple of times, and then I must have got him in the leg, then that's when he fell. And the clip was empty." Once the clip was empty, the petitioner ran and, while in flight, he dropped the first clip from the pistol and loaded a second clip. When asked why he loaded the second clip, he stated, "Because I didn't know if Merrill Epps was still in the area and he was going to come after me or not." The petitioner then threw the pistol in bushes by Winthrop School and proceeded to a pay telephone from which he called the New London police.

At the trial, the petitioner's version of the events was somewhat different. He testified that when he saw the victim get off his bike and walk toward him, knowing that the victim's friends were in the area, in order not to be trapped, he walked around so that no one would be behind him. He further testified that as the victim approached him, he asked the victim why, when the victim was by himself, he "never said nothing, but when his friends were around he would harass me?" He told the victim, "Just end it, you know, let it go." He testified that the victim said, "My friends aren't around now" and took off his coat and started walking toward the petitioner. The petitioner stated, "That's when I knew it wasn't going to end peacefully. So I had the gun and I fired twice down toward the ground." At that point, the petitioner indicated, the victim was standing approximately eight feet from him.

Thomas testified at trial that while the petitioner and the victim were talking, they were "about five feet away." Thomas also testified that there were other people in the area. He stated that "[t]here was like, you know, fifty, twenty-five people out there." Thomas stated that, as the victim started walking toward the

petitioner, "Marvin pulled out the gun and started shooting." Rena Cook, who was with the victim, testified at the criminal trial that when the victim went to take off his jacket, "that's when [the petitioner] pulled out the gun and started shooting." She testified that after the initial shots "[m]e and [the victim] turned around and we started running, and then he shot like four or five more times. And I was asking everybody, did David get shot? And then that's when I seen him on the ground. And I went across the street and stood over there." In his trial testimony, the petitioner stated that after he fired the two shots toward the ground, the victim turned to run and the bullets "[c]ome constantly and repeatedly, and it has a lot of kick to it." He stated that he was still trying to point the gun toward the ground but each time he fired, it "just kept going up."

In essence, the petitioner claimed at trial that he never intended to hit the victim, that he was simply trying to scare him and that the victim was struck accidentally. He claimed that he was unfamiliar with this particular weapon and that he never had fired a pistol before. The petitioner also testified at trial that he fired the shots into the ground "[b]ecause I didn't want to shoot him or shoot anybody in the area. That's why I fired down toward the ground and not over here or over there. Because there were people all around." The petitioner testified that the victim "ran into a dark area." That the area of the shooting was dark was corroborated by police testimony.

At trial, the petitioner testified that he called the police to turn himself in because he thought that the police could help him prove that he did not actually mean to shoot the victim. Once the police had the petitioner in custody, he led them to the location where he had left the pistol. The pistol was found with a clip in it loaded with six bullets, in addition to one bullet in the firing chamber. At the criminal trial, Officer Kenneth

Edwards of the New London police department testified that once in custody, the petitioner said "something to the effect of, 'I shot him cause he was going to get me.' "

The petitioner's trial counsel, Richard Perry, testified at the habeas hearing. Perry, who at the time of the hearing had been an attorney for approximately fourteen years, was employed in the public defender's office in New London. At the time of his representation of the petitioner, he served the court periodically as a special public defender. Perry stated that he did not file a request to charge on the lesser included offenses of manslaughter in the second degree or criminally negligent homicide because he did not feel that the evidence supported either charge. He based that determination on his own familiarity with weapons as a former police officer and on the facts that the petitioner was not familiar with weapons, that he utilized a .45 caliber semiautomatic pistol and that the pattern of bullet holes found in the victim demonstrated that there were five wounds, all within an area of approximately two feet. He testified to his belief that the petitioner's version of the accident was not substantiated by the evidence before the jury. He believed that there was no evidence to support the claim of accident apart from the petitioner's own testimony. Perry testified that, at the time of trial, he believed that his own credibility during argument would be significant for the jury, and he did not feel that he could credibly argue either criminally negligent homicide or manslaughter in the second degree. He also stated that he perceived a detriment to his client if he risked his credibility by arguing lesser included offenses that he thought were not supported by the evidence. He expressed a concern that if he argued too many lesser included offenses, he would risk losing the jury's favorable consideration of the one lesser included offense, manslaughter in the first degree, on which he believed he could credibly present

argument to the jury. As to manslaughter in the second degree, he testified that he did not feel that he could credibly argue that the petitioner had not acted under circumstances evincing an extreme indifference to human life, an element that distinguishes manslaughter in the first degree from manslaughter in the second degree. Aside from those reasons, Perry also testified that he did not believe the evidence would have supported a legal entitlement to a jury charge on the lesser included offenses of manslaughter in the second degree and criminally negligent homicide.

At the habeas hearing, attorney Jon Schoenhorn testified as an expert in criminal law in support of the petition. Schoenhorn, whom the court found to be an experienced criminal defense attorney, knowledgeable in Connecticut criminal law and procedure, offered his opinion that the petitioner was indeed entitled to have the jury charged on the lesser included offenses of manslaughter in the second degree and criminally negligent homicide. Schoenhorn further testified that no reasonable attorney would have failed to ask the court to charge the jury on these lesser included offenses. He noted that, as a norm, a reasonably prudent defense attorney would decline to request a charge on lesser included offenses only in a case in which the defendant claims noninvolvement and where the availability of lesser included offenses might lead to a compromise verdict, thus decreasing the potential for an outright acquittal. It was Schoenhorn's view that the facts of the allegations against the petitioner and his admitted involvement as the shooter did not present such a situation. Finally, Schoenhorn disagreed with Perry concerning the issue of credibility during argument. Schoenhorn testified that counsel is not required to articulate an argument for each offense on which the jury has been charged. It was Schoenhorn's view that the mere availability of a lesser included offense before a jury could

facilitate a verdict on the lesser offense where there is jury debate during deliberations on the defendant's degree of culpability.

In dismissing the petition, the habeas court found that it was reasonable for trial counsel not to have requested additional lesser included charges on manslaughter in the second degree and negligent homicide.[4] The habeas court concluded that the decision was not based on a mistaken belief that the petitioner was not entitled to the charges on the lesser included offenses, but rather on counsel's belief that he would be more credible in arguing a lesser included offense of manslaughter in the first degree and that he would be less credible in arguing the charges of manslaughter in the second degree or negligent homicide, while preserving the possibility of a guilty verdict on the lesser charge of manslaughter in the first degree. The habeas court also determined that the petitioner had not shown that he was prejudiced by his trial counsel's failure to make such a request, noting that the evidence was overwhelming that the petitioner had shot the victim under circumstances evincing an extreme indifference to human life, a required element of manslaughter in the first degree. The habeas court concluded, therefore, that the possibility of a conviction, under the circumstances shown, of either manslaughter in the second degree or negligent homicide, was not a sufficient probability to have undermined confidence in the jury's verdict.

The petitioner claims that he was denied his constitutional right to effective assistance of counsel guaran-

---

[4] The parties stipulated, and the habeas court found, that the petitioner would have been entitled to a jury charge on manslaughter in the second degree, General Statutes § 53a-56, had a proper request been made to the trial court. While not persuaded that the petitioner would have been entitled, as a matter of law, to a jury instruction on criminally negligent homicide, the habeas court assumed, arguendo, that one would have been given if requested.

teed by the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. The standard to be applied by habeas courts in determining whether an attorney effectively represented a criminal defendant is set forth in *Strickland* v. *Washington,* 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "In order for a criminal defendant to prevail on a constitutional claim of ineffective assistance of counsel, he must establish both (1) deficient performance, and (2) actual prejudice. . . . Thus, he must establish not only that his counsel's performance was deficient, but that as a result thereof he suffered actual prejudice, namely, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . In this context, a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, does not require the petitioner to show that counsel's deficient conduct more likely than not altered the outcome in the case. . . . Rather, it merely requires the petitioner to establish a probability sufficient to undermine confidence in the outcome." (Citations omitted; internal quotation marks omitted.) *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 445–46, 610 A.2d 598 (1992).

"In an appeal from the denial of a habeas writ, the burden imposed upon the petitioner is higher than that imposed on him in a direct appeal. In order to succeed in a claim of ineffective assistance of counsel, the petitioner must prove: (1) that his counsel's performance fell below the required standard of reasonable competence or competence displayed by lawyers with ordinary training and skill in the criminal law; and (2) that this lack of competence contributed so significantly to his conviction as to have deprived him of a fair trial. *Valeriano* v. *Bronson,* 209 Conn. 75, 85–86, 546 A.2d

1380 (1988); see also *Strickland* v. *Washington*, [supra, 466 U.S. 687]. A reviewing court can find against the petitioner on whichever ground is easier. *Valeriano* v. *Bronson*, supra [85–86]; *Nardini* v. *Manson*, 207 Conn. 118, 124, 540 A.2d 69 (1988)." (Internal quotation marks omitted.) *Magnotti* v. *Meachum*, 22 Conn. App. 669, 674, 579 A.2d 553 (1990).

We cannot, in a habeas corpus appeal, disturb underlying historical facts found by the habeas court unless they are clearly erroneous. *Siano* v. *Warden*, 31 Conn. App. 94, 95, 623 A.2d 1035, cert. denied, 226 Conn. 910, 628 A.2d 984 (1993). The habeas court judge, as trier of the facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. *Copas* v. *Warden*, 30 Conn. App. 677, 682, 621 A.2d 1378 (1993), on appeal after remand, 234 Conn. 139, 662 A.2d 718 (1995).

The habeas court concluded that the petitioner was not deprived of effective assistance of counsel because his trial counsel's decision not to request the instructions as to the additional lesser included offenses was reasonable. We agree.

While the petitioner may have been entitled to those two lesser included offense instructions, his counsel's failure to request them does not, under the circumstances present, necessarily deprive him, as a defendant in a criminal matter, of effective assistance of counsel. See *Fair* v. *Warden*, 211 Conn. 398, 404, 559 A.2d 1094, cert. denied, 493 U.S. 981, 110 S. Ct. 512, 107 L. Ed. 2d 514 (1989).

The habeas court found trial counsel's testimony credible as to his reason for not requesting the lesser included offense instructions; specifically, to argue the applicability of those lesser offenses would have jeopardized his argument that the petitioner was not guilty of murder. We agree, as the habeas court concluded,

that the evidence was overwhelming that Beasley shot the victim under circumstances evincing an extreme indifference to human life. Manslaughter in the first degree, the lesser included charge to murder, of which the petitioner was convicted, requires the jury to find that the petitioner acted "under circumstances evincing an extreme indifference to human life" and that he "recklessly [engaged] in conduct which [created] a grave risk of death to another person . . . ." General Statutes § 53a-55 (a) (3). Conversely, manslaughter in the second degree, as a lesser included charge to murder, does not require that the reckless conduct have occurred under circumstances evincing an extreme indifference to human life.

In reviewing a claim of ineffective assistance of trial counsel, we indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; it is the petitioner's burden to overcome the presumption that his attorney's actions or inactions were not, in fact, sound trial strategy. See *Levine* v. *Manson*, 195 Conn. 636, 640, 490 A.2d 82 (1985); *Larkin* v. *Commissioner of Correction*, 45 Conn. App. 809, 818, 699 A.2d 207 (1997). We also must make every effort to evaluate the challenged conduct from the counsel's perspective at the time. *Magnotti* v. *Meachum*, supra, 22 Conn. App. 674–75.

Guilt or innocence was not the issue at the petitioner's trial. There was no question that the petitioner caused the death of the victim by shooting him. The sole issue was whether the petitioner's actions, in firing seven shots in a crowded area and hitting the victim five times, constituted murder or whether the petitioner's reckless actions under circumstances evincing an extreme indifference to human life made him guilty of manslaughter in the first degree.

What constitutes effective assistance of counsel cannot be determined with yardstick precision, but necessarily varies according to the unique circumstances of each representation. *Jeffrey* v. *Commissioner of Correction*, 36 Conn. App. 216, 219, 650 A.2d 602 (1994). The habeas court may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of the trial. In doing exactly this, the habeas court concluded that Perry's conduct fell within the range of reasonable professional assistance and, therefore, the petitioner had failed to demonstrate that he received ineffective assistance of counsel. We conclude that the petitioner did not overcome the presumption that under the circumstances, his counsel's decision not to request further lesser included offense charges was sound trial strategy. See *Safford* v. *Warden*, 223 Conn. 180, 193, 612 A.2d 1161 (1992); *Hull* v. *Warden*, 32 Conn. App. 170, 175, 628 A.2d 32, cert. denied, 227 Conn. 920, 632 A.2d 691 (1993).

After a careful review of the record and transcripts, we agree with the habeas court that the performance of the petitioner's trial counsel, in not requesting instructions on the lesser included offenses of manslaughter in the second degree or negligent homicide, did not fall below the standard of reasonable competence. Having so concluded, we find it unnecessary to determine whether the habeas court properly dismissed the petitioner's writ on the basis of the petitioner's failure to establish prejudice.[5] See *Johnson* v. *Commissioner of Correction*, 218 Conn. 403, 428–29, 589 A.2d

---

[5] "[T]o show prejudice, the petitioner must establish that there exists a reasonable probability that the result of the trial would have been different but for counsel's ineffective assistance. *Levine* v. *Manson*, [supra, 195 Conn. 640]. A reasonable probability is a probability sufficient to undermine confidence in the verdict. *Bunkley* v. *Commissioner of Correction*, [supra, 222 Conn. 454]." *Dontigney* v. *Commissioner of Correction*, 42 Conn. App. 304, 305, 679 A.2d 55, cert. denied, 239 Conn. 918, 682 A.2d 999 (1996).

1214 (1991) (reviewing court can find against petitioner on either prong of *Strickland*); see also *Aillon* v. *Meachum*, 211 Conn. 352, 362, 559 A.2d 206 (1989); *Nardini* v. *Manson*, supra, 207 Conn. 124; *Harris* v. *Commissioner of Correction*, 40 Conn. App. 250, 256–57, 671 A.2d 359 (1996).

The judgment is affirmed.

In this opinion the other judges concurred.