[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Walbur Gonzalez, alleges in his petition for a Writ of Habeas Corpus originally filed on May 2, 2001 and amended on March 15, 2002, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, § 8 of the Constitution of the State of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel specifically alleges that the petitioner's trial defense counsel was deficient in failing to adequately investigate his asserted defense of an alibi.
This habeas petition came on for trial before the Court on November 6th and 7th, 2002. The petitioner, the petitioner's mother, Ms Rosa Alvarado, the petitioner's trial counsel, Attorney Kevin Barrs all testified at the trial. In addition, the Court received testimony from Mr. Marcellino Torres-Acevedo, Mr. Waldemar Alvarado-Cruz, and Ms. Yaritza Torres-Perez. The transcript of the petitioner's trial was received into evidence and marked as Respondent's Exhibit A. A Discharge summary for a hospitalization of Ms. Ana Breban Gonzalez was received and marked as Petitioner's Exhibit 1. The Court has reviewed all of the testimony and documentary evidence and makes the following findings of fact.
 Findings of Fact
1. The petitioner was the defendant in the criminal case of State vs. Gonzalez, Docket Number CR96-498655 tried in the Judicial District of Hartford where he was charged with violating C.G.S. §§ 53a-8 and 53a-54a (Accessory to Murder), and a violation of C.G.S. §§ 53a-48 and 53a-54a (Conspiracy to commit Murder).
2. The petitioner pled not guilty and in December 1999, after a trial on CT Page 14401 the merits, was convicted of Conspiracy to commit Murder by the jury.
3. The petitioner was represented by Attorney Kevin Barrs, who, at the time of this trial, was assigned to the Office of the Public Defender for the Judicial District of Hartford.
4. The Court, Mulcahy, J., sentenced the petitioner to a total effective sentence of seventeen (17) years to serve on February 16th, 2000.
5. The petitioner's direct appeal of his case was denied and his conviction upheld by an Appellate Court opinion dated May 14, 2002. State vs. Gonzalez, 69 Conn. App. 649, cert. den, 260 Conn. 937 (2002).
6. The petitioner's grandmother, Ana Breban Gonzalez, was hospitalized for complications arising from Coronary Artery Disease, Insulin Dependent Diabetes Mellitus, and Congestive Heart Failure at a hospital in Puerto Rico from June 14, 1994 to July 6, 1994.
7. The murder that was the basis of the petitioner's conviction occurred on July 13th, 1994:
8. The petitioner and his mother, Rosa Alvarado, traveled to Puerto Rico sometime during the summer of 1994 in order to provide assistance to the ailing grandmother.
9. Rosa Alvarado returned to Connecticut in August 1994 after staying in Puerto Rico, approximately one month. The petitioner remained in Puerto Rico where he continued to provide care for his grandmother.
10. Ana Breban Gonzalez passed away in December 1994 and the petitioner continued to reside in Puerto Rico until his arrest in September 1996, on murder charges pursuant to a warrant obtained in Connecticut.
11. During an interview at the police station in Puerto Rico following his arrest, the petitioner admitted to having been the driver of the car that had been chasing the victim on the night of the murder.
12. The car that was used to chase the victim on the night of his murder was a blue car that had been reported stolen in the early part of July 1994.
13. Fingerprints that were identified as belonging to the petitioner were found on the exterior of the blue car involved in the chase on the night of the victim's murder. CT Page 14402
14. The petitioner was, thereafter, returned to Connecticut to face trial on these charges.
15. Attorney Barrs repeatedly requested that the petitioner provide him with names, dates, supporting documentation, airline tickets or anything that might allow for the establishment of an alibi defense to the charges.
16. The petitioner never provided any of the requested information, nor could the petitioner identify a specific date upon which the travel to Puerto Rico took place or even to provide the name of the airline that was used.
17. The petitioner did not present an alibi defense at his 1999 trial.
18. Following his conviction in December 1999, but prior to his sentencing, the petitioner told Attorney Barrs that he had been the rear seat passenger in the blue car and that he could provide information that could lead to the conviction of the person who actually shot the victim. The petitioner asked Attorney Barrs to try and use this to obtain a favorable deal at the sentencing.
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandvs. Washington, 466 U. 5. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra
at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
Trial in this Court of a Habeas petition is not an opportunity for a CT Page 14403 new counsel to attempt to re-litigate a case in a different manner. A habeas court, knowing the outcome of the trial, "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commissioner ofCorrections, 47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967
(1998). Here, the allegation of substandard performance by Attorney Barrs in regard to a potential alibi defense is colored by the fact that the petitioner has been convicted of and sentenced for the crimes with which he was charged. Had the result been more favorable to the petitioner, it is likely that he would have had a different opinion of his attorney's efforts. In light of this, more than likely, natural human response, "[a] fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry vs. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
The sole argument asserted by the petitioner in this case is that his trial attorney was ineffective in failing to adequately investigate and present an alibi defense. Unfortunately for the petitioner, nothing could be further from the truth. It appears as if the petitioner does not clearly understand the role of a defense counsel in a criminal prosecution. While a defense counsel is under an ethical obligation to zealously represent his client, that obligation does not, and never has, permitted an attorney to present perjured testimony, present frivolous claims nor in any way attempt to deliberately mislead the tribunal. See Rules of Professional Conduct 3.1, 3.3 and 8.4. It is clear from an examination of the evidence in this petition that at the time of the 1999 trial Attorney Barrs did not have any basis upon which he could present an alibi defense on behalf of the petitioner. In fact, the facts adduced at the habeas trial show that had that been attempted, it would have failed miserably.
Notwithstanding, there was evidence at the petitioner's trial relative to the trip to Puerto Rico. First, all of the testimony at his 1999 trial was consistent that the trip took place in mid-July 1994.[1] While this testimony was not offered as an alibi defense,[2] it nevertheless made it into the trial. With the prosecution having raised the presence of the petitioner in Puerto. Rico following the shooting as evidence of the petitioner's "consciousness of guilt," Attorney Barrs was successful in introducing evidence that showed an alternative reason for the trip to CT Page 14404 Puerto Rico. So, while the petitioner did not present a formal alibi defense, he was able to present some evidence that, had it been believed by the jury, may have cast some reasonable doubt upon his guilt.
At the habeas trial, the petitioner has asserted that the failure of his trial defense counsel to adequately investigate this issue was an ineffective assistance of counsel. At the habeas trial, the petitioner presented testimony of several of his relatives that place him in Puerto Rico in mid-June of 1994. of course, if true, this evidence could have gone a long way towards establishing the petitioner's innocence. Nevertheless, none of the testimony before this Court was specific in placing the petitioner in Puerto Rico on July 13th, 1994. All of the testimony was vague as to the specific date that the petitioner arrived in Puerto Rico, although they were consistent in placing it in June 1994. Moreover, the individuals who testified at the habeas trial were unknown to Attorney Barrs at the time of the petitioner's trial because the petitioner never provided him with any of these names.
The petitioner has placed a great deal of reliance upon Petitioner's Exhibit 1, the medical discharge summary. He alleges that had the defense counsel obtained this document that it would have refreshed the recollection of the petitioner and his mother as to the specific date that they arrived in Puerto Rico in 1994. However, when one examines the testimony of Ms. Alvarado from the petitioner's trial, it is clear that while this document may have refreshed their memories, it would also have clearly showed that the trip to Puerto Rico was in July 1994, not June 1994.[3] Despite the testimony at the habeas trial that the petitioner and his mother went directly from the airport to the hospital, the sworn testimony at the 1999 trial says otherwise. Given the testimony at the 1999 trial, it is more likely than not that the testimony at that trial was accurate in portraying the Puerto Rico trip as mid-July, not June.
There are a few other matters that came out at the habeas trial that putt the viability of an alibi defense into serious question. First, there is some evidence that the blue car used in the shooting was a stolen vehicle. Although the exact date of the theft of this car has not been established, there has been some intimation in the testimony that this took place in early July 1994. With the petitioner's fingerprints having been found on the blue car, significant doubt would exist to support a belief that he was in Puerto Rico in mid-June 1994. Second, the statements attributed to the petitioner while he was in custody in Puerto Rico[4] and to his attorney after his conviction[5] all undermine the allegation that he was in Puerto Rico in mid-June 1994. Finally, the total failure of the petitioner to provide any sort of corroboration of the date of the trip (airline name, name of the travel agency at which CT Page 14405 the tickets were purchased, even the names of the people in Puerto Rico who could allegedly support his alibi) to his trial defense counsel all lead inescapably to the conclusion that the alibi defense was not presented because it was not an alibi.
More importantly, however, the petitioner has failed to demonstrate any prejudice that befell him as a result of the alleged failure of his trial defense counsel to conduct an adequate pretrial investigation. It is not necessary to even consider whether a trial counsel's performance was deficient if the Habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v. Washington, supra, 697; seeNardini v. Manson, 207 Conn. 118, 124, 540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson,209 Conn. 75 at 86 (1988). Where there has been no proof of any prejudice, the Court has no choice but to deny the petition for a Writ of Habeas Corpus.
In the instant case, the petitioner has attempted to show that had his alibi been presented to the jury, that it would have produced a different result. of course, it is the petitioner's argument that the reason why the alibi was not presented was due solely to the inadequate investigation. It is clear that had the evidence adduced at the habeas trial been presented to the jury in the 1999 trial, that his alibi defense would have been rejected. Moreover, given the holes in the testimony concerning the potential alibi before this Court, it is likely that instead of aiding the petitioner in his criminal case, this evidence would have undermined the credibility of the petitioner's own testimony at that trial. Even assuming deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694. This Court can only conclude that if it was a mistake for the trial defense counsel at the 1999 trial to fail to present the testimony of the witnesses as they testified at the habeas trial, that this mistake inured to the benefit of the petitioner.
Given the failure of the petitioner to show that the acts or omissions of trial defense counsel were constitutionally deficient, let alone a showing of any prejudice flowing therefrom, this Court will deny the petition for habeas corpus. CT Page 14406
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
 ___________________ S.T. Fuger, Jr., Judge