[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Emile E. King, alleges in his petition for a Writ of Habeas Corpus originally dated September 5, 1996, and amended on January 25, 1999, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges three specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to inquire into the effect that the petitioner's prescribed psychotropic medications had upon the petitioner's ability to understand the proceedings at which he entered a plea of nolo contendre. Second, the petitioner complains that the trial counsel failed to adequately advise the petitioner concerning his options regarding the decision to enter into a pretrial agreement or to proceed to trial. Finally, he alleges that his trial counsel failed to conduct a sufficient investigation into the potential emotional or mental defenses to the prosecution's case.
This matter came on for trial before the Court on December 2, 2002. The petitioner was the only witness who testified at the trial. In addition, the Court received a transcript of the petitioner's March 14th, 1994 plea and sentencing before Judge Joseph P. Flynn into evidence. The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
 Findings of Fact
1. The petitioner was the defendant in the criminal case of State vs. King, Docket Number CR92-81233 tried in the Judicial District of Danbury where he was charged by a single count information of having committed murder in violation of C.G.S. § 53a-54 (a). CT Page 15805
2. The petitioner was represented by Attorney Michael K. Courtney, an assistant publlc defender in the Judicial District of Danbury, throughout all of the proceedings in this criminal case.
3. On March 14th, 1994 reached a pretrial agreement with the state whereby the petitioner would enter a written plea of nolo contendre in exchange for which the state would recommend the minimum mandatory sentence of twenty-five years.[1] Thereafter, the petitioner was convicted of the charged offense following his written plea of nolo contendre.
4. The trial court, Flynn, J., conducted a lengthy and detailed inquiry into the voluntariness and providence of the petitioner's plea. During this inquiry, the state's attorney presented an extensive explanation of the facts, including the clear and direct involvement of the petitioner, surrounding the events leading to the death of the victim of this crime, Mr. Jason Cord Quinlan.
5. Prior to accepting the petitioner's plea and entering a finding of guilty to the charge of murder, the Court inquired if the petitioner understood the maximum and minimum punishments. The petitioner replied that the maximum punishment was 60 years incarceration and that the minimum mandatory punishment was 25 years incarceration.
6. At the time of his plea and sentencing, the petitioner was taking Tegretol[2] to treat depression. This medication caused the petitioner to experience some forgetfulness, drowsiness and blurred vision.
7. The petitioner had had numerous psychiatric examinations prior to the entry of his plea. Two examinations with a Dr. Johnson, three examinations with a Dr. Harris, and one examination with a Dr. Grove.
8. During the examination with Dr. Grove, the petitioner admitted to stabbing the victim.
9. At sentencing on March 14th, 1994, the petitioner again admitted stabbing and causing the death of the victim.[3]
10. On March 14th, 1994, the petitioner waived his right to a presentence investigation and thereafter the Court, Flynn, J., sentenced the petitioner to a total effective sentence of twenty-five years incarceration, the minimum mandatory sentence for the crime of murder. CT Page 15806
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set Forth by the United States Supreme Court in Stricklandvs. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth amendment." Strickland, infra at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the, defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, Infra at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill vs.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas vs.Commissioner 234 Conn. 139, at 151 (1995). Given this modified standard to be applied to plea cases[4], the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but CT Page 15807 must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commisioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry vs. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson, 209 Conn. 75 at 86 (1988). This first requires a consideration of the effect of the three specific charges of deficiency made by the petitioner.
At the outset of this analysis, it must be noted that the proof at the trial of this matter consisted almost exclusively of the testimony of the petitioner. What was lacking was any testimony from any sort of medical expert as to the effects of Tegretol. Indeed, despite the assertions contained within the complaint, there has not even been any proof that this medication is even a psychotropic medication. So far as side effects and the impact that Tegretol might have had upon the petitioner, the Court has been limited to the testimony of the petitioner and the transcript of the plea and sentencing. While the petitioner testified that this medication had some ill effects upon him, a review of the transcript, Petitioner's Exhibit 1, does not reveal there to have been any evidence of confusion or forgetfulness or doubt on the part of the petitioner as to what was taking place. In fact, the petitioner does respond to Judge Flynn in a rational, coherent, and appropriate manner at all times during the March 14th, 1994 proceeding.
There has been no evidence presented to this Court to conclude that the petitioner's trial defense counsel failed to inquire into the effect that the petitioner's medication may have had upon him. Attorney Courtney was not presented to this Court as a witness so there is no direct evidence CT Page 15808 that he deliberately ignored or overlooked any debilitating side effects of Tegretol. When one reviews the trial transcript it is clear that there was nothing that took place in the courtroom on March 14th, 1994 that should have alerted Mr. Courtney, the Court, or the state's attorney to the incapacity, if any, of the petitioner.[5] Given this lack of evidence, there is no way for this Court to conclude that Attorney Courtney, or anyone else for that matter, should have recognized that the petitioner was suffering debilitating side effects of Tegretol.
As regards the second claim of the petitioner, there has been no evidence that the trial defense counsel failed to adequately advise the petitioner about the merits of accepting the pretrial agreement and the merits of going to trial. Even the testimony of the petitioner at the habeas trial fails to address this claim of ineffective trial representation. The main focus of the complaints of the petitioner is that he is being confined in a correctional facility rather than being treated at the Whiting Forensic Institute. The petitioner alleges that it was his belief that he was going to be sent to the Whiting Forensic Institute (hereafter "Whiting") instead of prison. Nevertheless, when one reviews the transcript of March 14th, 1994, there is no mention whatsoever of confinement at Whiting. In fact, the transcript is clear that the petitioner was to serve the minimum mandatory sentence of twenty-five years in jail.
Finally, the petitioner has alleged that the trial defense counsel failed to adequately investigate the potential emotional or mental defenses to the charge of murder. To the contrary, there has been evidence that mental health professionals, no less than six times prior to his acceptance of a plea agreement, had examined the petitioner. Indeed, at the plea and sentencing proceeding on March 14th, 1994, the trial defense counsel specifically indicated that he had considered raising a mental competency defense and concluded that it would not have been successful.[6] In the total absence of evidence that there was any inadequacy in Attorney Courtney's pretrial consideration of the mental defense issue, this Court can only conclude that his performance was adequate.
Clearly, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even assuming deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694. Even assuming that the mental condition of the petitioner could have been a viable issue at CT Page 15809 trial, there has been no evidence presented to this Court in the form of expert medical testimony that his mental condition could have in any way convinced a jury to render a not guilty verdict by reason of insanity. Given the total failure of the petitioner to show any prejudice, even
assuming that the acts or omissions of trial counsel were deficient, this Court will deny the petition for habeas corpus.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
 ___________________ S.T. Fuger, Jr., Judge