[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Gregory V. Walker, alleges in his petition for a Writ of Habeas Corpus originally dated June 27, 1997, and amended on October 23, 2002, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth and Fourteenth Amendments to the United States. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges six specific ways in which the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial counsel failed to take the time to discuss with the petitioner the calling and interviewing of potential witnesses. Second, the petitioner complains that the trial counsel failed to adequately inform the petitioner of the state's case against him. Third, the petitioner asserts that his trial defense counsel did not fully discuss the ramifications of the various offers of pretrial agreements. Fourth, the petitioner says that his counsel did not consult with the petitioners on matters that might be used in his defense. Fifth, the petitioner claims that his trial defense counsel did not examine or have an expert examine photographs of the crime scene. Finally, he alleges that his trial counsel failed to investigate individuals who claimed that the petitioner sold drugs.
This matter came on for trial before the Court on December 2, 2002. The petitioner and his trial defense counsel, Attorney Lawrence Hopkins, were the only witnesses who testified at the trial. There was no documentary evidence offered to the Court, nor was the testimony of any expert witness (legal, or crime scene investigation) proffered. The Court has reviewed all of the testimony and evidence and makes the following findings of fact.
 Findings of Fact
1. The petitioner was the defendant in the criminal case of State vs.CT Page 15812 Walker, tried in the Judicial District of Fairfield where he was convicted by a jury of having committed murder in violation of C.G.S. § 53a-54 (a).
2. The petitioner was represented at his trial by Attorney Lawrence Hopkins, throughout all of the proceedings in this criminal case. There was a probable cause hearing conducted in this case at which both petitioner and counsel were present.
3. The petitioner and his counsel met numerous times throughout the pendency of this case.
4. There were at least three pretrial offers of settlement in this case. One of the offers would have been for a prison term of 17 years, a second for a prison term of 20 years with a right to argue for less, and a prison term of 35 years to serve. All of these proposals would have required the petitioner to plead guilty to murder.
5. All of the offers to enter into a pretrial agreement were conveyed to the petitioner by his trial defense counsel. In so doing, Attorney Hopkins clearly indicated to the petitioner if the offer from the state was for a short period of time or not.
6. The petitioner rejected all of the offers and elected to proceed to trial. The trial defense counsel advised the petitioner that his chances of prevailing at the trial were not good and that he should accept the state's offers.
7. The petitioner offered his trial defense counsel the names of two individuals, Benny Bernard and Eleanor Smith, whom he believed might have favorable evidence. Neither of these witnesses was present at the scene of the crime.
8. The petitioner has described Eleanor Smith as a drug addicted prostitute.
9. According to the petitioner, Benny Bernard was killed about one month before the petitioner's trial began.
10. It is not clear whether Attorney Hopkins interviewed either of these two potential witnesses.
11. The murder of James Singletary[1] took place in an alleyway. The crime scene was photographed during the investigation of the crime. The trial defense counsel did examine these photographs. CT Page 15813
12. The petitioner's defense at trial was the he did not commit the crime.
13. The jury nonetheless convicted the petitioner.
14. The petitioner was, thereafter, sentenced to thirty years confinement on June 6th 1986.
 Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandvs. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley vs. Commisioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den. 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of CT Page 15814 reasonable professional assistance." Henry vs. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not even necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')" Valeriano vs. Bronson, 209 Conn. 75 at 86 (1988).
At the outset of this analysis, it must be noted that the proof at the trial of this matter consisted almost exclusively of the testimony of the petitioner. The assertions in the petitioner's complaint are unproven. What was lacking was any testimony from any sort of legal expert as to the errors, if any, of Attorney Hopkins. Indeed, despite the assertions contained within the complaint, there has not been any proof that the trial defense counsel failed to adequately inform the petitioner of the strength of the government's case against him. In fact, the petitioner was well aware of the government's case, having sat through the probable cause hearing and being told by his attorney that the prosecutor would "eat the petitioner alive," if the matter went to trial. It is likewise clear that the trial defense counsel did examine the photograph in question and deemed it to be unable to produce any type of exculpatory material.
As regards the third claim of the petitioner, there has been no evidence that the trial defense counsel failed to adequately advise the petitioner about the merits of accepting the pretrial agreement and the merits of going to trial. Even the testimony of the petitioner at the habeas trial falls to address this claim of ineffective trial representation. It is clear that the petitioner was aware of the various pretrial offers and it is equally clear that Attorney Hopkins was urging him to accept the state's offer. In the end, however, it is the petitioner's decision as to whether or not a pretrial agreement is to be entered into. It is important to keep in mind that there is nothing in the law that requires the prosecution to even attempt to negotiate a pretrial agreement. While some defendants may have a mistaken belief that they are entitled to enter into a pretrial agreement to settle a criminal charge, that simply is not true. It is, of course, obvious that pretrial agreements are necessary to keep the criminal justice process moving smoothly and that both the state and the defendants can benefit from CT Page 15815 properly negotiated pretrial agreements.
Clearly, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even assuming deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694. The closest matter raised by the petitioner that could have constituted deficient performance by trial defense counsel is the failure to interview Ms. Smith and Mr. Bernard. However, even if there was something to be gained from those interviews, it is clear that the petitioner did not suffer any prejudice. As regards Ms. Smith, she was not present at the scene of the crime and there has been no evidence presented to this Court to determine what her testimony could have added to the petitioner's trial. What was presented was the allegation that Ms. Smith was a drug addicted prostitute and this would have made her a risky witness to present to a jury. Consequently, this Court will not conclude that the failure, if there was such a failure, to interview Ms Smith resulted in prejudice to the petitioner. In regards to the potential information of Mr. Bernard, with his death before the petitioner's murder trial, any information to which he could have testified died along with him. Any attempt to introduce hearsay evidence of what Mr. Bernard might have said would have been unsuccessful. Once again, the petitioner fails to prove prejudice to his case, even assuming that the petitioner's trial counsel's performance was deficient.
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
 ___________________ S.T. Fuger, Jr., Judge