[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision
The petitioner, Luis Angel Lebron, alleges in his petition for a Writ of Habeas Corpus originally filed with the Court on October 17, 2000, and amended on September 10, 2002, that he was denied the effective assistance of counsel at the trial level in violation of the Sixth andFourteenth Amendments to the United States Constitution as well as Article I, Section 8 of the Constitution of the state of Connecticut. For the reasons set forth more fully below, the petition shall be denied.
The claim of ineffective assistance of counsel alleges three specific ways in which the performance of the petitioner's trial defense counsel was deficient. First, the petitioner asserts that the trial defense counsel failed to pursue discovery to obtain and communicate with the petitioner regarding the evidence against the petitioner such as police reports, witness statements and warrants. Second, the petitioner complains that the trial defense counsel failed to challenge the petitioner's arrest and search of the area in which he was arrested, as well as the arrest warrant itself. Finally, he alleges that his trial defense counsel failed to communicate with the petitioner regarding legal standards and evidentiary standards so that the petitioner could make a knowing and voluntary decision of whether to proceed to trial or plead guilty.
This matter came on for trial before the Court on February 18, 2003. The petitioner, and his trial defense counsel, Attorney Thomas Conroy, were the only witnesses who testified at the trial. In addition, the Court received a transcript of the petitioner's June 24, 1997 probable cause hearing, his May 13, 1999 guilty plea canvass, and his August 12, 1999 sentencing before Judge Frank Ianotti as well as two statements by the petitioner and a witness, Jacqueline Garcia,[1] into evidence. The Court has reviewed all of the testimony and evidence and makes the following findings of fact. CT Page 2578-fl
Findings of Fact
1. The petitioner was the defendant in two criminal cases, Docket Numbers CR97-168981, and CR99-180763, pending in the Judicial District of New Britain in which he was charged with: murder in violation of CGS § 53a-54a (a) and tampering with a witness.
2. Attorney Kenneth Simon, a public defender assigned to the Judicial District of New Britain, initially represented the petitioner in this matter.
3. A state offer of a recommended sentence of twenty-five years to serve in exchange for a guilty plea to murder was rejected by the petitioner and the case was set down for trial.
4. During jury selection on the 1997 murder case, the petitioner was charged with additional counts of witness tampering. Attorney Simon believed that he would be a necessary witness for the petitioner and was allowed to withdraw from his representation of the petitioner.
5. The Court thereafter declared a mistrial and appointed Attorney Thomas Conroy as a special public defender to represent the petitioner in both matters.
6. Attorney Conroy was able to reach a pretrial agreement with the state whereby the petitioner would enter pleas of guilty, under theAlford doctrine, to a substitute information charging manslaughter in the first degree with a firearm in violation of CGS § 53a-55a, and conspiracy to tamper with a witness in violation of CGS §§ 53a-48 and53a-151 in exchange for which the state would recommend a sentence of not greater than thirty years, with the petitioner retaining the right to argue for a lower sentence at sentencing. In addition, the sentence for the conspiracy would be an unconditional discharge.
7. On May 13, 1999, the trial court, Ianotti, J., conducted a detailed inquiry into the voluntariness and providence of the petitioner's plea.
8. The prosecutor provided the following factual basis of the alleged manslaughter for the guilty plea canvass: "on May 11, 1997, the decedent in this case, Earl Baker, Jr., was in a dispute with a defendant's sister over a rental car. One of the defendant's sisters scratched the rental car while she was in a dispute with somebody. Earl Baker, Jr. was pressing her to pay for the damage to the car. During the course of the dispute Earl Baker struck the defendant's sister with has hand, knocked her down. The defendant drew a weapon, a firearm pistol, and shot Earl CT Page 2578-fm Baker, Junior once killing him."
9. Prior to accepting the petitioner's plea and entering a finding of guilty, the Court inquired if the petitioner had had sufficient time in which to consult with his attorney, whether he was satisfied with his lawyer's representation, and whether he wished to waive his rights to a jury trial, to confront and cross-examine his accusers and present defenses. The petitioner answered in the affirmative.
10. Thereafter, the petitioner was convicted of the charged offenses in accordance with his plea.
11. At sentencing on August 12, 1999, the Court, Ianotti, J., in full compliance with the pretrial agreement, sentenced the defendant to the full thirty-year sentence on the manslaughter charge and sentenced him to an unconditional discharge on the conspiracy charge.
Discussion of Law
Any claim of ineffective assistance of counsel must satisfy both prongs of the test set forth by the United States Supreme Court in Stricklandv. Washington, 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh. denied467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d (1984) before the Court can grant relief. Specifically, the petitioner must first show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, infra
at 687. If, and only if, the petitioner manages to get over the first hurdle, then the petitioner must clear the second obstacle by proving "that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, infra at 687. In short, the petitioner must show both deficiency and prejudice. A failure to prove both, even though counsel's trial performance may have been substandard, will result in denial of the petition.
"Although Strickland applies generally to the evaluation of whether ineffective assistance of counsel during criminal proceedings has infringed on a petitioner's constitutional rights, the United States Supreme Court has articulated a modified prejudice standard for cases in which the conviction has resulted from a guilty plea. See Hill v.Lockhart, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Hill
CT Page 2578-fn requires the petitioner to demonstrate that he would not have pleaded guilty, that he would have insisted on going to trial and that the evidence that had been undiscovered or the defenses he claims should have been introduced were likely to have been successful at trial." Copas v.Commissioner, 234 Conn. 139, at 151 (1995). Given this modified standard to be applied to plea cases, the petitioner must first prove that the performance by his trial defense counsel was deficient and, that absent this deficient performance, the petitioner would have pled not guilty, would have gone to trial, and been acquitted.
Trial in this Court of a habeas petition is not an opportunity for a new counsel to attempt to re-litigate a case in a different manner. It is indisputable fact that many times if one had foreknowledge of certain events; different courses might well have been taken. Likewise, a habeas court knowing the outcome of the trial "may not indulge in hindsight to reconstruct the circumstances surrounding the challenged conduct, but must evaluate the acts or omissions from trial counsel's perspective at the time of trial." Beasley v. Commissioner of Corrections,47 Conn. App. 253 at 264 (1979), cert. den., 243 Conn. 967 (1998). "A fair assessment of an attorney's performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances to counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Henry v. Commissioner ofCorrection, 60 Conn. App. 313 at 317 (2000).
It is not necessary to consider whether a trial counsel's performance was deficient if the habeas Court is satisfied that there was no prejudice to the defendant by the actions of the trial counsel in representing the petitioner. "A reviewing court can find against a petitioner on either ground, whichever is easier. Strickland v.Washington, supra, 697; see Nardini v. Manson, 207 Conn. 118, 124,540 A.2d 69 (1988) (`[a] court deciding an ineffective assistance of counsel claim need not address the question of counsel's performance, if it is easier to dispose of the claim on the ground of insufficient prejudice')." Valeriano v. Bronson, 209 Conn. 75 at 86 (1988).
The petitioner asserts that he had a self-defense argument that he wanted to raise at his trial. He now alleges that his plea of guilty was coerced and involuntary. "[G]uilt, or the degree of guilt, is at times uncertain and elusive, an accused, though believing in or entertaining doubts respecting his innocence, might reasonably conclude a jury would be convinced of his guilt and that he would fare better in the sentence CT Page 2578-fo by pleading guilty. McCoy v. United States, 124 U.S. App. D.C. 177, 179,363 F.2d 306, 308 (1966)." See North Carolina v. Alford, 400 U.S. 25
at 33 (1970).
In the instant case, the petitioner was charged with murder that would have, had he been convicted, exposed him to a lengthy sentence of twenty-five years to life in prison. It is clearly understandable then why the petitioner would have made the voluntary decision to plead guilty under the Alford doctrine in order to minimize his potential exposure and obtain an earlier release from confinement. "Reasons other than the fact that he is guilty may induce a defendant to so plead . . . [and he] must be permitted to judge for himself in this respect. State v. Kaufman,51 Iowa 578, 580, 2 N.W. 275, 276 (1879)." See North Carolina v. Alford,400 U.S. 25 at 33 (1970). By making the pragmatic decision to plead guilty, even though he may have believed himself to have a colorable defense, the petitioner obtained a plea agreement that potentially could have led to a sentence as low as five years[2] and avoided a potential prison sentence that would have meant imprisonment for the rest of his life.
The ultimate decision as to whether a criminal defendant pleads guilty or pleads not guilty rests with the individual charged with the crime. A criminal defendant has a Constitutional right to persist in a plea of not guilty, even in the face of seemingly insurmountable obstacles. It is not, and never has been, for the trial defense counsel to decide the plea that his client should enter. However, "[b]ecause a defendant often relies heavily on counsel's independent evaluation of the charges and defenses, the `right to effective assistance of counsel includes an adequate investigation of the case to determine facts relevant to the merits or to the punishment in the event of conviction.' Copas v.Commissioner of Correction, 234 Conn. 139, 154 (1995)." See Baillargeonv. Commissioner of Correction, 67 Conn. App. 716 at 721 (2002). Consequently, an attorney who fails to conduct an adequate investigation may well be providing ineffective representation.
In the instant case, it is clear that Attorney Conroy did all that he could have done to represent his client's interests. He did meet with his client on several occasions, review the police reports and other documents contained within the prosecutor's file, and review the report of investigation by the public defender's investigators. Mr. Conroy recognized the potential self-defense argument, but evaluated it as very weak. In addition, the petitioner had been convicted of assault in the first degree with a firearm about eight years previous to this incident. His assessment of the totality of the evidence was that the best that the petitioner could hope to achieve would be a verdict of guilty to CT Page 2578-fp manslaughter.
Most importantly, however, Attorney Conroy did negotiate a favorable plea bargain for his client, "To satisfy the prejudice prong, the petitioner must show a `reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Baillargeon v. Commissioner of Correction, 67 Conn. App. 716
at 722 (2002). Here, despite the possibility of his being able to raise self-defense, the petitioner made the conscious decision to elect to take the pragmatic approach of pleading guilty under the Alford doctrine in order to minimize his potential exposure and sentence. The petitioner made the voluntary decision to take that course rather than to insist upon a not guilty plea and a trial on the merits. "In determining the validity of a plea, `[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' North Carolina v. Alford,400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970)." State v. Parker,67 Conn. App. 351 at 354 (2001).
As regards the three specific claims of the petitioner, the evidence adduced at the habeas trial does not support the inadequacy of Attorney Conroy's representation. The Court heard no evidence to even suggest that there was any irregularity in the arrest and search of the petitioner such that a motion to dismiss the charges might have been in order. Moreover, the petitioner did not suffer any prejudice as a result of any of the challenged actions or omissions of the trial counsel. Even had there been deficient performance, the petitioner must still show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, infra at 694. Given the petitioner's knowing, voluntary and intelligent choice to plead guilty, this Court will deny the petition for habeas corpus.
The Court notes that the sentence of thirty years to serve was the maximum allowable sentence under the plea agreement. Consequently, it leads one to wonder why the petitioner would have rejected an earlier offer of twenty-five years for murder only to plead at a later time and get thirty years for manslaughter. One difference lies in the eligibility for parole. With the murder conviction, the petitioner would have had to serve the full twenty-five years, whereas under manslaughter, the petitioner will be eligible for parole after serving a bit over twenty-four years. Most significant was the fact that the petitioner had the opportunity to argue for a lower sentence under the plea agreement. While the sentencing court was required to impose at least a five-year CT Page 2578-fq sentence, it could have declined to adjudge more. In this regard, despite a strong attempt by Attorney Conroy to mitigate, the petitioner was his own worst enemy as far as the sentence goes. He apparently wrote a letter to the father of the decedent in which he used some ill thought out words, blaming the decedent; he expressed little to no remorse and contrition in exercising his right to allocution, again blaming the decedent and verbally attacking the prosecutors for their conduct of the case. As a final measure, he lost his temper with the sentencing judge, repeatedly interrupted the Court and finally made the comment that the Court should just give him his thirty years and let him get out of the courtroom.[3]
Accordingly, the Petition for a Writ of Habeas Corpus is denied.
S.T. Fuger, Jr., Judge